**Evelyn AUTEN and Eldon Auten, Appellants,**

v.

**DJ CLARK, INC., d/b/a Double Arches Corporation, Donald E. Clark, and Janet C. Clark, Appellees.**

No. 14–05–00393–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 2, 2006.

Sanford B. Kahn, Houston, for appellants.

Andrea N. Moore, Houston, for appellees.

Panel consists of Justices HUDSON, FOWLER, and SEYMORE.

**OPINION**

CHARLES W. SEYMORE, Justice.

Appellants, Evelyn Auten and Eldon Auten ("the Autens"), sued appellees, D.J. Clark, Inc. d/b/a Double Arches Corporation, Donald E. Clark, and Janet C. Clark (collectively "the Clarks"), for personal injuries. The Autens filed suit before limitations expired, but they did not serve the Clarks until more than a year after limitations expired. The trial court granted summary judgment in favor of the Clarks on the ground that the Autens' suit was barred by the statute of limitations because they did not exercise due diligence to serve the Clarks. In their sole issue, the Autens contend the trial erred by granting summary judgment.[1] Because the Autens raised a genuine issue of material fact on whether they exercised due diligence to serve the Clarks, we reverse and remand.

## I. STANDARD OF REVIEW

In order to "bring suit" within the applicable limitations period, a plaintiff must both file suit within the limitations period and use due diligence to serve the defendant with process. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990); *Belleza–Gonzalez v. Villa*, 57 S.W.3d 8, 11 (Tex. App.-Houston [14th Dist.] 2001, no pet.). If a plaintiff files suit within the limitations period, but serves the defendant after the limitations period has expired, the date of service relates back to the date of filing if the plaintiff exercises due diligence in obtaining service. *Gant*, 786 S.W.2d at 260; *Brown v. Shores*, 77 S.W.3d 884, 887 (Tex. App.-Houston [14th Dist.] 2002, no pet.); *Belleza–Gonzalez*, 57 S.W.3d at 11. A plaintiff is not required to use the highest

---

1. The Autens also sued McDonald's Corporation, but the trial court granted McDonald's Corporation's motion for summary judgment, and the Autens do not appeal that order.

degree of diligence to procure service, but is required to use the degree of diligence that an ordinarily prudent person would have used under the same or similar circumstances. *See Belleza–Gonzalez*, 57 S.W.3d at 12; *Valdez v. Charles Orsinger Buick Co.*, 715 S.W.2d 126, 127 (Tex.App.-Texarkana 1986, no writ); *Beavers v. Darling*, 491 S.W.2d 711, 714 (Tex.Civ.App.-Waco 1973, no writ).

■■■ To obtain summary judgment on the ground that a suit was not served within the limitations period, a defendant must show that, as a matter of law, the plaintiff did not exercise due diligence to effect service. *See Gant*, 786 S.W.2d at 260; *Brown*, 77 S.W.3d at 887. Generally, the question of diligence is a question of fact, but if no excuse is offered for a delay in the service of citation, "or if the lapse of time and the plaintiff's acts are such as conclusively negate diligence, a lack of diligence will be found as a matter of law." *Belleza–Gonzalez*, 57 S.W.3d at 12; *Valdez*, 715 S.W.2d at 127. When a defendant has affirmatively pleaded the defense of limitations and shown that the plaintiff failed to timely serve the defendant, the burden shifts to the plaintiff to explain the delay. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex.1990); *Brown*, 77 S.W.3d at 887; *see Belleza–Gonzalez*, 57 S.W.3d at 11. Once the plaintiff presents an explanation, the burden shifts back to the defendant to show why that explanation is insufficient as a matter of law. *Carter v. MacFadyen*, 93 S.W.3d 307, 313 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *see Belleza–Gonzalez*, 57 S.W.3d at 11.

We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

## II. Discussion

The Autens claim Mrs. Auten was injured on May 15, 2001 when she fell at a McDonald's restaurant owned and operated by the Clarks. Therefore, the limitations period expired on May 15, 2003. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon Supp.2006) (prescribing two-year statute of limitations for personal injury suits). In their motion for summary judgment, the Clarks presented undisputed proof that the Autens filed suit on May 12, 2003—three days before limitations expired, but they did not serve the Clarks until May 20, 2004—just over a year after limitations expired.

In response to the motion for summary judgment, the Autens presented evidence explaining the delay and their attempts to procure service. The Clarks suggest that the Autens' explanations are insufficient as a matter of law.[2] We disagree and conclude the Autens raised a genuine issue of material fact on whether they exercised due diligence to serve the Clarks. The Autens' attempts to procure service during the year-long delay can be divided into three distinct periods as follows:

*May 30, 2003 to July 12, 2003: Process Server Attempts Service Unsuccessfully Five Times and Executes Affidavits To Support Substituted Service:*

■■■ The Autens first attempted service using a process server on May 30, 2003—

---

2. The appellate record does not contain any reply by the Clarks to the Autens' response to the motion for summary judgment. Nonetheless, the Clarks apparently anticipated the Autens' explanations because, in their motion for summary judgment, the Clarks suggested reasons the explanations are allegedly insufficient.

about two weeks after limitations expired.[3] From May 30, 2003 to June 17, 2003, the process server tried unsuccessfully to serve the Clarks on five occasions:

- **5–30–03** The process server received no answer at the address for the Clarks shown in the petition. He left a business card and asked the Clarks to contact him.[4]
- **5–31–03** A relative informed the process server the Clarks had moved to a different address around the corner. The process server received no answer at this other address although two vehicles were present. He again left his business card and asked them to contact him.
- **6–2–03** The process server again received no answer at this other address. The business card he previously left was gone, so he left another and again asked them to contact him.
- **6–3–03** The process server returned to this other address and spoke with the Clarks' son who stated they were not home and he would give them the business card.
- **6–17–03** The process server again returned to this other address and spoke with the Clarks' son who stated they were not home, so the process server left his business card again.

The process server then advised the Autens' counsel of his efforts. Counsel requested that he sign affidavits to support motions for substituted service. On July 12, 2003, the process server executed three affidavits, describing his attempts to serve the Clarks and opining they were evading service and could be served by affixing the citation to the front door of this other address at which he had attempted service or leaving it with someone over the age of sixteen.[5]

The Clarks suggest that the Autens' explanation regarding this period was insufficient. They cite *Roberts v. Padre Island Brewing Co.*, in which the court stated that it is the responsibility of the person requesting service, not the process server, to see that service is properly accomplished, and "the plaintiff's reliance on a process server does not constitute due diligence." 28 S.W.3d 618, 621 (Tex.App.-Corpus Christi 2000, pet. denied). However, when making this statement, the court cited its earlier decision in *Gonzalez v. Phoenix Frozen Foods, Inc. See id.* (citing *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 589–90 (Tex.App.-Corpus Christi 1994, no writ)). The *Gonzalez* court actually stated that "mere reliance" and "misplaced reliance" on a process server do not constitute due diligence. *See Gonzalez*, 884 S.W.2d at 590.[6] The *Roberts* and *Gonzalez*

---

**3.** The Autens did not affirmatively demonstrate their activity during this two-week period. However, we can reasonably infer that citations issued and they retained a process server because he first attempted service two weeks after limitations expired.

**4.** In their petition, the Autens asserted that D.J. Clark, Inc. d/b/a Double Arches Corporation could be served through Donald E. Clark, its registered agent and that Donald E. Clark and Janet Clark could be served at the same address. Thus, the process server tried to serve all three appellees at the same address.

**5.** *See* Tex.R. Civ. P. 106(b) (allowing trial court, upon motion supported by affidavit

stating defendant's usual abode and unsuccessful attempts at personal service at that location, to authorize service by leaving citation with anyone over age sixteen or in some other manner the affidavit shows will be reasonably effective to give notice).

**6.** *See also Bilsing v. State Indus., Inc.*, 173 F.Supp.2d 593, 598 (S.D.Tex.2001) (citing *Gonzalez* as stating that "misplaced reliance" on process server does not constitute due diligence); *Taylor v. Thompson*, 4 S.W.3d 63, 65 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (same).

courts did not hold that using a process server to attempt service can never constitute due diligence. *See Roberts,* 28 S.W.3d at 620–21; *Gonzalez,* 884 S.W.2d at 590.

In *Roberts,* the process server retained by the plaintiff never served the defendant, and another individual ultimately achieved service sixty-eight days after limitations expired. *See* 28 S.W.3d at 621. The court held that the plaintiff did not exercise due diligence as a matter of law because a reasonable person in the same or similar circumstances would have sought service by some alternative means. *See id.* Notably, there is no indication the plaintiff outlined the process server's attempts, if any, to effect service. *See id.* at 621–22. Rather, the plaintiff merely asserted that she repeatedly attempted to contact the process server and the district clerk's office about the status. *See id.* at 621.

In contrast, here, the evidence shows the process server persistently tried to serve the Clarks five times over a two-and-a-half week period. When a relative informed him on his first visit that the Clarks had moved, he immediately attempted service at the other address provided and returned four times. Although he waited two weeks before his last visit, this wait was not necessarily unreasonable considering he had personally left his business card with their son on his previous visit. *See Taylor v. Rellas,* 69 S.W.3d 621, 623 (Tex.App.-Eastland 2002, no pet.) (finding fact issue on due diligence although process servers took over a month to serve defendant and this period included fifteen-day and twenty-day delays between attempts). Moreover, the Autens' counsel did not simply defer to the process server for some lengthy period because, at counsel's request, the process server executed affidavits to support motions for substituted service approximately three weeks after his last attempt. Thus, the evidence indicates more than "mere reliance" or "misplaced reliance" on the process server.

In sum, after limitations expired, approximately two months passed while the Autens attempted unsuccessfully to serve the Clarks personally via a process server and prepared to file motions for substituted service. We conclude that it was not necessarily unreasonable to attempt personal service for two months before seeking court intervention through motions for substituted service. *See Tate v. Beal,* 119 S.W.3d 378, 380–81 (Tex.App.-Fort Worth 2003, pet. denied) (finding fact issue on whether plaintiff used due diligence during three-month period after limitations expired, considering she attempted service two weeks after limitations expired but had incorrect address, located correct address, requested second citation, and hired process server who achieved service); *Cf. Gonzalez,* 884 S.W.2d at 590 (finding lack of due diligence where plaintiffs' attorney simply relied on process server's misrepresentation that "the matter was taken care of" for fourteen months after suit was filed because a diligent attorney would have noticed defendant had not filed an answer and contacted court clerk to check the status).

**Second Week of July 2003 to October 7, 2003: Counsel's Legal Assistant Lapses Into Coma and Subsequently Dies; Counsel is Incapacitated by Serious Illness but Ultimately Files Motions for Substituted Service.**

Counsel's plan to seek substituted service was then interrupted. During the second week of July 2003—about the time the process server executed his affidavits—counsel's only legal assistant collapsed during church and fell into a coma. She remained in a coma until she died on July 26, 2003. She had been responsible for maintaining counsel's files, contacting

courts and process servers, and ensuring service was effected in this case. Upon her death, counsel tried to locate and hire a new legal assistant. Further, counsel faced the task of determining the stages of his cases. Counsel determined that the Clarks had not been served and the legal assistant had been preparing to obtain substituted service.

Meanwhile, counsel developed a life-threatening infection himself in late July or early August 2003. He was hospitalized from August 19, 2003 until August 22, 2003. When he was discharged, he continued to receive antibiotics intravenously and was ordered to strict bed rest for two weeks (until September 5, 2003). During this time, he was unable to tend to business matters. At the beginning of September 2003, he hired a new legal assistant. On October 7, 2003, the Autens filed three motions for substituted service, requesting authorization to serve each of the Clark defendants by leaving the citation at their address with anyone over the age of sixteen or on their door. In sum, the Autens filed the motions approximately three months after the process server executed his affidavits.

■ Before considering the sufficiency of the Autens' explanation for this delay, we must address the Clarks' contention that we may not consider the evidence regarding counsel's illness because it was filed late without leave of court. The Autens first mentioned counsel's illness in his supplemental affidavit attached to the Autens' supplemental response to the motion for summary judgment. The Autens filed the supplemental response after the summary judgment hearing, but before the trial court granted summary judgment; thus, it was filed late. *See* Tex.R. Civ. P. 166a(c) (providing that, except on leave of court, non-movant must file its response and opposing summary judgment evidence no later than seven days before the summary judgment hearing). There is no indication in the record that the trial court accepted the late-filed response.

■ However, after the trial court signed the order granting summary judgment, the Autens filed a motion for new trial and attached another affidavit by counsel describing his illness. "A trial court may accept summary judgment evidence filed late, even after summary judgment, as long as the court affirmatively indicates in the record that it accepted *or considered* the evidence." *Stephens v. Dolcefino*, 126 S.W.3d 120, 133–34 (Tex. App.-Houston [1st Dist.] 2003, pet. denied) (emphasis added); *see Mathis v. RKL Design/Build*, 189 S.W.3d 839, 843–44 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (same); *see also Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex.1996) (recognizing that, unless the record affirmatively indicates trial court permitted the late filing of summary judgment evidence, the appellate court must presume the trial court did not consider the late-filed evidence); *Brown*, 77 S.W.3d at 886 (same).

In its order denying the motion for new trial, the trial court stated, "after considering Plaintiffs' Motion for New Trial, the response, affidavits, the pleadings in this matter, and other evidence on file, this Court is of the opinion that such motion should hereby be Denied." Therefore, the trial court affirmatively indicated that it considered the affidavit attached to the motion for new trial although it denied the motion, effectively reaffirming its earlier ruling. Accordingly, we may consider the affidavit. *See Stephens*, 126 S.W.3d at 133–34 (considering, on appeal from summary judgment in favor of defendant, evidence presented by plaintiffs at hearing on their motion for new trial because trial

court stated at hearing that it would include the evidence in the summary judgment record, although it denied the motion for new trial, effectively reaffirming its earlier ruling).[7]

■ The Clarks again suggest the Autens' explanation regarding this period is insufficient. They contend the Autens cannot rely on any failures on the part of their counsel or his legal assistant to show due diligence because the actions of a legal assistant are imputed to the attorney, whose actions, in turn, are imputed to his client. *See Agristor Credit Corp. v. Donahoe,* 568 S.W.2d 422, 426 (Tex.Civ.App.-Waco 1978, writ ref'd n.r.e.) (citing *Petro–Chem. Transp., Inc. v. Carroll,* 514 S.W.2d 240, 246 (Tex.1974)). However, the evidence does not conclusively establish a lack of diligence on the part of the legal assistant or counsel to be imputed to the Autens.

The legal assistant and counsel obviously did not abandon the substituted service through mere inaction considering they were both incapacitated during some of this period. We recognize counsel did not explain the steps he took to ascertain the status of his cases while he was not incapacitated and exactly when he learned the status of this case. Nonetheless, he experienced two unusual hardships during this period. We can reasonably infer that it would take some time for an attorney to resume the normal operation of a law practice after his only assistant lapses into a coma and subsequently dies and after he has been incapacitated due to a serious illness.

In light of these hardships, the three-month delay before counsel filed the motions for substituted service does not negate due diligence as a matter of law.[8] *See Edwards v. Kaye,* 9 S.W.3d 310, 314–15 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (finding fact issue on due diligence despite three-month delay between expiration of limitations and notification to counsel that citation had not issued, considering counsel was in trial out of town during the first half of this period and promptly requested issuance of citation when notified it had not issued); *Valdez,* 715 S.W.2d at 127–28 (finding fact issue on due diligence despite eight-month delay between expiration of limitations and service, including five-month delay between counsel's request for issuance of citation and first attempt to discover why it had not been served, during which the law clerk who handled the case left the firm and counsel subsequently became more familiar with and monitored the file).

---

7. *See also K–Six T.V. v. Santiago,* 75 S.W.3d 91, 96–97 (Tex.App.-San Antonio 2002, no pet.) (considering, on appeal, late-filed summary judgment response where trial court's order denying motion for summary judgment recited that it considered the response); *Oryx Energy Co. v. Union Nat'l Bank,* 895 S.W.2d 409, 412 n. 3 (Tex.App.-San Antonio 1995, writ denied) (holding, on appeal from summary judgment, that evidence attached to motion to reconsider was properly before appellate court where trial court's order denying motion recited that the evidence was "deemed timely filed"); *Cf. McMahan v. Greenwood,* 108 S.W.3d 467, 499–500 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) (refusing to consider additional evidence attached to motion for new trial following summary judgment where record did not affirmatively indicate trial court considered the additional evidence or party requested leave to file additional evidence).

8. Even if we could not consider the late-filed evidence regarding counsel's illness, we would still find a genuine issue of material fact on whether the Autens exercised due diligence during this period based on the unusual hardship caused by the legal assistant's coma and subsequent death.

*December 19, 2003 to May 20, 2004: Counsel Follows Up With Clerk's Office on Status of Substituted Service Nine Times Before Citations Are Issued and Served:*

 The next activity occurred on December 19, 2003, when the Autens' counsel contacted the district clerk's office to follow up on the request for substituted service. Between December 19, 2003 and April 30, 2004, he contacted the clerk's office nine times:

- 12–19–03 Counsel's new legal assistant called the clerk's office and was told the substituted service had been "overlooked" and would be immediately "sent out."
- 1–26–04 The legal assistant called the clerk's office and was told the order allowing substituted service had not been signed and was assured it would be signed.
- 2–10–04 The legal assistant called the clerk's office and was told that a citation could not be served without an $8.00 fee, so counsel issued a check to the clerk for that amount.
- 3–15–04 The legal assistant called the clerk's office and was told that the fee had not been received, so counsel issued another check for $8.00.
- 3–17–04 The legal assistant called the clerk's office and was told the fee had been received and citation would be issued.
- 4–7–04 The legal assistant called the clerk's office and was told that another $8.00 fee was required, the clerk's office had no instructions regarding whom to serve or where to effect service, and the clerk's office needed copies of the petition and motion for substituted service.[9] That day, the legal assistant wrote to the clerk complaining about the inability to obtain substituted service thus far.
- 4–12–04 Counsel chose to bypass the clerk's office and requested that the clerk send the citations to Attorney Services of Greater Houston.
- 4–27–04 Attorney Services of Greater Houston informed counsel's office that it twice called the clerk's office but still had not received the citations.
- 4–30–04 Counsel's office again called the clerk's office and was told that all the citations had been sent to Attorney Services of Greater Houston the day before.[10]

On May 20, 2004, the Clarks were served—approximately seven months after the Autens filed the motions for substituted service.

The Clarks also assert the Autens' explanation regarding this period is insufficient. The Clarks acknowledge the clerk's office may have contributed to the delay, but contend the "overwhelming majority" of the delay was due to counsel's failure to follow up. We disagree. The evidence indicates the clerk's office bore a good deal of responsibility for the delay because it "overlooked" the motions for substituted service, and the orders were not signed until at least several months after the mo-

---

9. The copy of the motion for substituted service on Donald E. Clark attached to the Autens' summary judgment response is missing two pages of the supporting affidavit. We cannot determine whether the pages were missing from the motion that was actually filed or just missing from the copy attached to summary judgment response. Regardless, it does not appear that any pages missing from the actual motion contributed to the delay because the clerk's office suggested all the motions had been "overlooked" and later requested a copy of all the motions—not just the missing pages, if any.

10. The citations indeed reflect that they were issued on April 29, 2004.

tions were filed. Nonetheless, counsel waited approximately two-and-a-half months after he filed the motions to first follow up on the status.

■■■ The Clarks cite *Boyattia v. Hinojosa,* in which service on one defendant was effected after limitations expired because there was a three-month unexplained delay between the clerk's issuance of a citation and delivery of the citation to the constable. 18 S.W.3d 729, 732–33 (Tex.App.-Dallas 2000, pet. denied). The court stated that a party may ordinarily rely on the clerk to perform his duty to issue and deliver citations within a reasonable time. *See id.* at 734.[11] The court further recognized that parties have limited control over a clerk's actions, and a party may be vigilant and vigorous in urging the clerk to issue and deliver a citation to no avail. *Id.* Thus, when the clerk delays in issuing or delivering a citation, the passage of time alone is not controlling on the issue of a party's diligence. *Id.* Instead, courts look to whether a party's actions manifest a "bona fide intention" to have process served. *Id.* When a party learns, or by exercise of diligence should have learned, that the clerk has failed to fulfill his duty, it is incumbent on the party to ensure the job is done. *Id.* The court concluded that the plaintiff failed to exercise due diligence because three months is not a reasonable time for the clerk to deliver a citation; therefore, the plaintiff should have known the clerk was not fulfilling his duty and was obligated to make an effort to ensure delivery. *Id.*

■■■ Here, the Autens were waiting on more than just the clerk's delivery of citations that had already been issued. The substituted service required the trial court's authorization before the citations could issue. *See* TEX.R. CIV. P. 106(b). Counsel certainly had limited control over the trial court's timing with respect to signing the three requested orders, particularly considering that it is within a trial court's discretion whether to authorize substituted service after a proper supporting affidavit is filed. *See id.; Coronado v. Norman,* 111 S.W.3d 838, 841 (Tex.App.-Eastland 2003, pet. denied). We cannot penalize the Autens' counsel for giving some respectful deference to the trial court with respect to ruling on the motions on its own timing. Therefore, the two-and-a-half-month delay before the first follow-up contact is not so unreasonable that it negates due diligence as a matter of law. We find at least an issue for the trier of fact on whether counsel acted as an ordinarily prudent person under the same or similar circumstances by waiting this length of time to follow up.

Moreover, after his first contact, counsel contacted the clerk's office eight times over a four-and-a-half month period to follow up on the status of the substituted service. The shortest delay between contacts was two days while the longest delay was slightly more than a month. These regular contacts are evidence of a "bona fide intention" to obtain substituted service. *See Valdez,* 715 S.W.2d at 128 (finding fact issue on due diligence where evidence included plaintiff counsel's explanation that, once he determined defendant had not been served, he made various calls to sheriff's office and clerk's office over a three-month period before learning citation fee had not been paid); *see also Bilsing v. State Indus., Inc.,* 173 F.Supp.2d 593, 599 (S.D.Tex.2001) (finding fact issue on due diligence where inexpli-

---

11. *See also* TEX.R. CIV. P. 99(a) (providing that, upon filing of the petition, the clerk, when requested, shall forthwith issue a citation and

deliver the citation as directed by the requesting party).

cably court's order allowing service via private process server was entered by the clerk two months after it was signed, and plaintiff contacted the clerk's office once a month to check on the status).

■ Finally, the Clarks point out that counsel's failure to pay the required fees for service on three defendants contributed somewhat to the delay in the clerk's issuance of the citations for substituted service.[12] However, the clerk's office did not inform counsel that additional fees were required until after he had made several calls to follow up on the citations. Significantly, counsel paid the additional fees once he learned they were required. Thus, we can reasonably infer that his original failure to pay all the required fees was caused by mere inadvertence on his part, coupled with a miscommunication with the clerk's office.

■ A miscalculated attempt to effect service due to inadvertence or miscommunication may raise a fact issue on due diligence while inactivity or complete failure to attempt service due to a miscommunication negates due diligence as a matter of law. *See Keeton v. Carrasco*, 53 S.W.3d 13, 24–25 (Tex.App.-San Antonio 2001, pet. denied). Considering counsel's overall efforts to follow up on the status of the substituted service, his failure at one point to pay all the required fees does not negate due diligence as matter of law. *See Valdez* 715 S.W.2d at 127–28 (finding fact issue on due diligence where service on one defendant was delayed because plaintiff sued two defendants, but counsel paid only one citation fee, believing it was sufficient for service on both defendants due to a miscommunication between his firm and

clerk's office); *Saenz v. Keller Indus. of Texas, Inc.*, 951 F.2d 665, 666–68 (5th Cir. 1992) (finding fact issue on due diligence although delay in issuance and service of citation was caused by plaintiff counsel's failure to submit required summons request form due to miscommunication with clerk's office, coupled with his failure to observe local rules).

### III. CONCLUSION

Although the Autens served the Clarks slightly more than a year after limitations expired, this case does not involve extended, unexplained delays without any attempts at service. Rather, the Autens explained the delays and their attempts to procure service, and the Clarks failed to show that these explanations are insufficient as a matter of law.[13] Therefore, the Autens have raised a genuine issue of material fact on whether they exercised due diligence to procure service. *Compare Martinez v. Becerra*, 797 S.W.2d 283, 285 (Tex.App.-Corpus Christi 1990, no writ) (finding fact issue on due diligence despite fifteen-month delay in service after limitations expired where plaintiff's counsel outlined efforts to obtain service); *Valdez*, 715 S.W.2d at 127–28 (finding fact issue on due diligence despite eight-month delay where counsel explained attempts to procure service); *with Gant*, 786 S.W.2d at 259–60 (finding lack of due diligence as a matter of law where plaintiffs served the defendant six years after limitations expired and failed to explain three separate periods of delay consisting of six months, twenty months, and twelve months); *Williams v. Houston–Citizens Bank & Trust Co.*, 531 S.W.2d 434, 435–36 (Tex.Civ.App.-Houston

---

12. This failure to pay all the required fees contributed only partly to the delay because it took at least several months for the orders allowing substituted service to be signed before the fees even became an issue.

13. I respectfully submit that our dissenting colleague does not fully appreciate the vagaries of managing a civil litigation practice.

[14th Dist.] 1975, writ ref'd n.r.e) (finding lack of due diligence as a matter of law based on unexplained delay of thirteen months between expiration of limitations and service, including seven-month delay between return of first unserved citation and issuance of second citation).

Accordingly, the trial court erred by granting summary judgment in favor of the Clarks on the ground the suit was barred by the statute of limitations. We sustain the Autens' sole issue. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

J. HARVEY HUDSON, Justice, dissenting opinion.

HUDSON, J., dissenting.

Limitations statutes afford plaintiffs what the legislature deems a reasonable time to present their claims and protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990). Thus, the purpose of a statute of limitations is to establish a point of repose and to terminate stale claims. *Id.*

Moreover, the mere filing of suit will not interrupt the running of limitations unless due diligence is exercised in the issuance and service of citation. *Kindle v. Wood County Elec. Co-op, Inc.,* 151 S.W.3d 206, 209 (Tex.App.-Tyler 2004, pet. denied). Whether a plaintiff was diligent in serving a defendant is normally a question of fact, but if no excuse is offered for a delay or if the lapse of time coupled with the plaintiff's acts conclusively negate diligence, lack of diligence will be found as a matter of law. *Proulx v. Wells,* 186 S.W.3d 630, 633 (Tex.App.-Fort Worth 2006, pet. filed).

Here, the delay between filing the petition and effecting service is more than 12 months. While counsel offers up a litany of unfortunate events as an excuse for the delay, these circumstances fall well short of explaining the full duration of his inactivity. Some of the delay is explained, but many of the incremental delays are unexplained. For example,:

(1) 2 weeks between filing and the first attempt at service;

(2) 3 weeks between the process server's last attempt at service and the filing of his affidavit;

(3) 5 weeks between the hiring of a new legal assistant and the filing of a motion for substituted service;

(4) 9 weeks between the filing of motion for substituted service and the first follow up contact with the district clerk's office;

(5) 5 weeks between the first follow up contact with the district clerk's office and the second follow up contact with the district clerk's office;

(6) 2 weeks between the second follow up contact with the district clerk's office and the third follow up contact with the district clerk's office; and

(7) 4½ weeks between the third follow up contact with the district clerk's office and the fourth follow up contact with the district clerk's office.

These delays constitute more than 30 weeks of unexplained inactivity or approximately 7½ months.

The majority suggest that counsel's hardships may well account for the full 12 month delay, and, thus, they find a fact issue is raised regarding counsel's exercise of due diligence. However, I see no evidence that counsel felt any exigency or urgency in effecting service of process.

The record, rather, indicates that counsel was content to repeatedly let weeks of unexplained inactivity accrue into a total of more than seven months. Accordingly, I would find, as a matter of law, that the Autens have failed to show due diligence in effecting service of process. Thus, I must respectfully dissent.