

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00711-CV

Cathy **CHARBONNET** and Ernest Charbonnet,
Appellants

v.

Farouk **SHAMI**, Individually; Farouk Systems, Inc. d/b/a Farouk Systems Group; Armstrong McCall, Inc.; Armstrong McCall Holdings, Inc.; Armstrong McCall Management, L.C.; and Andrew Guerra,
Appellees

From the 98th District Court, Travis County, Texas
Trial Court No. D-1-GN-11-001136
The Honorable Tim M. Sulak, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  June 12, 2013

AFFIRMED

This is an appeal of a summary judgment in a suit for personal injury damages sustained by Cathy Charbonnet.  Cathy and her husband, Ernest, appeal the trial court's entry of a summary judgment in favor of Appellees.  The appeal largely focuses on the validity and effect of a release of liability signed by Cathy.  We affirm the summary judgment.

**BACKGROUND**

Cathy attended a hair show in Mississippi hosted by Appellees for the purpose of having her hair styled by her regular stylist. After arriving at the location, Cathy was told that her stylist would not be able to style her hair, so she agreed to let Andrew Guerra, one of the Appellees, style her hair.

Cathy did not model in the show but, instead, sat backstage while her hair was being colored and styled. While sitting backstage, a representative of Appellees requested permission to use photographs of Cathy for marketing purposes. Cathy was asked to sign a document granting Appellees permission to use her photograph and releasing them from liability for future claims arising from their services or products. According to Cathy, she was informed that the form she signed permitted use of her photograph, but she was never told she was also releasing Appellees from future liability.

The coloring and treatment products were applied to Cathy's hair at approximately 8:45 a.m. and removed at approximately 2:00 p.m. During that time period, multiple individuals worked with Cathy's hair, sometimes with lengthy intervals between activity. When Cathy expressed concern about the amount of time the chemicals had been on her hair and scalp, she was assured the chemicals had not been on her hair too long. Around 2:00 p.m., the chemicals were washed out of Cathy's hair.

When Cathy awoke the next morning, she noticed that her hair was beginning to fall out. Within a few weeks, Cathy lost all of the hair on her body. Cathy was diagnosed with *alopecia areata universalis*, which is a medical condition that causes rapid loss of all hair on one's body. There is no treatment for the condition, and it is likely permanent. It is alleged that Cathy's condition manifested as a result of her prolonged exposure to the chemicals used by Appellees.

In April of 2011, the Charbonnets filed suit against Appellees. Cathy and Mr. Guerra were deposed in February of 2012. In April of 2012, Appellees filed motions for summary judgment. After a hearing on the motions, the trial court granted summary judgment in favor of Appellees. The Charbonnets then filed a motion for new trial, and it was overruled by operation of law.

**THE RELEASE**

### A. *Standard of Review*

Appellate courts review the grant of summary judgment de novo. *Exxon Corp. v. Emerald Oil & Gas Co.*, 331 S.W.3d 419, 422 (Tex. 2010); *Lesieur v. Fryar*, 325 S.W.3d 242, 246 (Tex. App.—San Antonio 2010, pet. denied). In a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law." *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). If the trial court does not state the grounds for its ruling, we will affirm the summary judgment if any of the grounds presented in the motion are meritorious. *Id.*; *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013). "A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish that defense." *Havlen v. McDougall,* 22 S.W.3d 343, 345 (Tex. 2000); *Fields v. Klatt Hardware & Lumber, Inc.*, 374 S.W.3d 543, 545–46 (Tex. App.—San Antonio 2012, no pet.). When reviewing the grant of a traditional motion for summary judgment, "we take as true all competent evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Lesieur*, 325 S.W.3d at 246.

### B. *Did the Release Provide Fair Notice?*

In their second point of error, the Charbonnets claim the trial court erred in granting Appellees' motions for summary judgment because there are fact issues concerning whether the release signed by Cathy provided fair notice that she was releasing Appellees from liability for their own negligence. The Texas Supreme Court has developed fair-notice requirements that must be met when parties attempt to exculpate themselves, in advance, from liability for their own negligence. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). A party has provided fair notice of a release from future liability when its release complies with the express negligence doctrine and is conspicuous. *Id.* at 508; *Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 569 (Tex. App.—San Antonio 2004, no pet.). Whether a release of liability fulfills the requirements of fair notice is a question of law for the court. *Dresser*, 853 S.W.2d at 509. Thus, a release that does not satisfy both fair notice requirements is unenforceable as a matter of law. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004).

The Charbonnets argue only that the release in this case was not conspicuous; therefore we will not consider whether the release satisfies the express negligence doctrine. A release of future liability is conspicuous when it draws the attention of a reasonable person looking at the face of the document such that the person ought to notice it. TEX. BUS. & COM. CODE ANN. § 1.201(b)(10) (West 2009); *Dresser*, 853 S.W.2d at 508, 511 (defining conspicuousness as it is defined in the Texas Business and Commerce Code). When determining whether a release is conspicuous, we consider whether the release is set off by a heading in capital letters and in a different size, type, font, or color than the surrounding text. TEX. BUS. & COM. CODE ANN. § 1.201(b)(10)(A); *see also Dresser*, 853 S.W.2d at 510–11. We also examine whether the language in the body of the release is in a different size, type, font, or color from the surrounding

text, or whether it is "set off from the surrounding text of the same size by symbols or marks that call attention to the language." TEX. BUS. & COM. CODE ANN. § 1.201(b)(10)(B); *Littlefield v. Schaefer*, 955 S.W.2d 272, 274–75 (Tex. 1997). Further, releases are often conspicuous when the entire document containing the release is a single page and the language of the release appears on the front side of the page and not "hidden under a separate heading or surrounded by unrelated terms." *Dresser*, 853 S.W.2d at 510 (citing *Enserch Corp. v. Parker*, 794 S.W.2d 2, 9 (Tex. 1990)). *But see Littlefield*, 955 S.W.2d at 274 (holding that the release was not conspicuous, despite the fact that release was the only writing on a single-page document, when the text of the release was so small that it was illegible).

As reproduced below, the document releasing Appellees from liability is a single page and contains only two paragraphs on the front side of the page.

---

### *Farouk Systems, Inc.*
#### *Technical Model's Release and Waiver Form*

---

**ALL MODELS MUST BE AT LEAST 18 YEARS OF AGE.**

**You Grant Permission to Use Photos**
In consideration of the services performed by or on behalf of FAROUK SYSTEMS, INC. and the Farouk Systems Distributors (herein collectively called "Farouk"), I hereby give Farouk and their successors and assigns unrestricted permission to copyright, produce, exhibit, reproduce, use, publish, sell or transfer any photographic pictures of me (whether in motion or still) in conjunction with my own or a fictitious name, for any and all lawful purposes, including without limitation, art, advertising or trade, including the use of any printed matter in conjunction therewith, and I hereby transfer all rights, title and interest, if any, I have in said pictures, negatives, reproductions, and copies, or any use to which they may be applied. This release also applies to finished pictures, finished product, negatives, and reproductions, including any printed matter in conjunction therewith.

## YOU RELEASE "FAROUK" FROM LIABILITY
Further, I hereby release and hold harmless Farouk Systems, Inc, Farouk Systems Distributors, their employees and representatives, and their successors and assigns (collectively referenced as "Farouk") for all claims, demands and liabilities that I, my heirs, personal representatives or assigns have, may have or claim to have arising directly or indirectly out of any hair care or beauty services performed on my person or property by Farouk or any products or equipment used in connection with the beauty or hair care services. This release includes but is not limited to claims for personal injury or property damage which is the result of Farouk's negligence, gross negligence, misconduct, product liability and/or strict liability, whether or not Farouk's negligence, gross negligence, misconduct, product liability and/or strict liability occurs in the future.

Program or Function: _____   Date: _____

Technician(s): _____

**I AM AT LEAST 18 YEARS OLD, HAVE READ AND UNDERSTAND ALL THE PROVISIONS OF THIS RELEASE AND WAIVER, AND I AGREE TO ALL ITS CONTENTS AS EVIDENCED BY MY SIGNATURE BELOW.**

| Please Print Name: | Mailing Address: | Work Phone: ( ) |
|---|---|---|
| Model's Signature: | City/State/Zip: | Home Phone: ( ) |

The document is clearly identified as a release and waiver. The first paragraph grants Appellees permission to use Cathy's photo and the second paragraph releases Farouk, its representatives, its employees, and its distributors[1] from liability. As is evident, the heading of the second paragraph states: "YOU RELEASE 'FAROUK' FROM LIABILITY." This heading is in capital letters, is larger than the heading of the first paragraph, and is in a bold font. The

---

[1] Armstrong McCall, Inc., Armstrong McCall Holdings, Inc., and Armstrong McCall Management, L.C. (collectively "AMPL") asserts that it is a distributor of Farouk, and the Charbonnets do not challenge the applicability of the waiver to AMPL.

- 6 -

language in the body of the second paragraph is also in a larger font than the language in the body of the first paragraph and is in a bold font, unlike the first paragraph. It also appears the heading and body of the second paragraph are in a different font than the heading and body of the first paragraph. Additionally, apart from the release paragraph, surrounded by multiple lines of space, and directly above Cathy's signature is a sentence in all capital letters that reads: "I AM AT LEAST 18 YEARS OLD, HAVE READ AND UNDERSTAND ALL THE PROVISIONS OF THIS RELEASE AND WAIVER, AND I AGREE TO ALL ITS CONTENTS AS EVIDENCED BY MY SIGNATURE BELOW."

Relying on *Littlefield v. Schaefer*, the Charbonnets argue that the text in the body of the second paragraph is "nearly illegible" and that "[al]though capital letters are present in a few areas of Defendants' document, the capital letters do not effectively contrast one portion of the release from another." Specifically, the Charbonnets point to language in *Littlefield* stating that larger font in the heading of a release is not, alone, sufficient to make the release conspicuous. *Littlefield*, 955 S.W.2d at 275. Although we do not dispute the truth of this general proposition, it must be placed in context. The release in *Littlefield* contained larger headings indicating that the text was a release of liability, but the body of the text was printed in "miniscule typeface" that was smaller than the surrounding text and was placed in the bottom left corner of the document. *Id.* at 274–75. The statement cited by the Charbonnets was explaining that merely using larger headings indicating a release of liability will not suffice when the signatory has no idea what claims he is releasing because the text is too small to read. *Id.* at 275. The release in this case is nothing like the release in *Littlefield*. The release signed by Cathy contained not only a larger heading, but also text of a legible size in a bold font.

The Charbonnets also appear to assert that Cathy was misled about the contents of the document, claiming that she was informed only that the document granted Appellees permission

- 7 -

to use her photograph. The Charbonnets never alleged fraud, nor did they point to any authority holding that a less-than-complete or misleading description of a document's contents can defeat a release that provides fair notice of its contents. Thus, any such contention is waived by the Charbonnets. TEX. R. APP. P. 33.1; TEX. R. APP. P. 38.1. Because the document containing the release was only about half of a page in length and contained only two paragraphs, and because the language of the release was legible and distinguished from the surrounding texts in multiple ways, we conclude the release signed by Cathy was sufficiently conspicuous to put a reasonable person on notice of its existence and terms.

### C. Can a Pre-Injury Waiver of Liability Release Appellees from Liability for a Subsequent Misrepresentation?

In their fourth appellate point, the Charbonnets argue that a pre-injury waiver of claims cannot release a party from liability for misrepresentations or warranties made after the waiver is signed. The Charbonnets cite no authority supporting their contention that a valid waiver does not operate against future wrongdoings of Appellees. Moreover, since a pre-injury waiver is designed to release a party in advance from liability, future wrongdoings would generally be encompassed within the scope of the waiver. *Dresser*, 853 S.W.2d at 508.

In this case, the Charbonnets released Appellees from any claim "arising directly or indirectly out of any hair or beauty services performed" regardless of whether the conduct giving rise to the claim occurred then or in the future. A release "operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Dresser*, 853 S.W.3d at 508. In light of the existing law on this issue, and in the absence of any contrary authority provided by the Charbonnets, we overrule their fourth appellate issue.

### D. *Was the Release Invalid As Against Public Policy to the Extent It Purported to Waive Claims of Gross Negligence?*

In their third point of error, the Charbonnets contend Texas public policy prohibits Appellees from obtaining an advance waiver of their liability for gross negligence. Appellees assert that the Charbonnets have not preserved this claim for appellate review because they did not specifically plead gross negligence as a cause of action or raise the issue in their response to Appellees' motions for summary judgment. The Charbonnets argue that their factual allegations put Appellees on notice of their gross-negligence claim and that gross negligence is only negligence of a different degree, not type, so it does not have to be separately pleaded. Assuming, without deciding, the Charbonnets' factual assertions in their pleadings were sufficient to permit proof of gross negligence at trial, the Charbonnets' argument regarding the public policy of prohibiting waiver of gross negligence is not properly preserved for our review.

The purpose of Texas Rule of Civil Procedure 166a(c) is to require motions for summary judgment, responses, and other replies to provide adequate information to the opposing party and to define the issues to be determined for summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). "Issues not expressly presented to the trial court by written motion, answer[,] or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). After the movant has presented a legally sufficient motion for summary judgment, "the non-movant must expressly present to the trial court, by written answer or response, any issues defeating the movant's entitlement." *McConnell*, 858 S.W.2d at 343 (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)). "[T]hese rules further the policy of seeking clarity and simplicity in summary judgment practice." *Id.* at 341.

Appellees' motions for summary judgment clearly stated that they were premised on the affirmative defense of release of liability. Indeed, Appellees expressly stated that "Plaintiff signed a release that expressly bars any claims against Farouk and its distributor[]s [for] negligence, gross negligence, misconduct, product liability, or strict liability." This and similar statements gave the Charbonnets notice that Appellees were asserting release of liability as an affirmative defense to any possible claim of gross negligence. As a result, the Charbonnets had an obligation to present in writing any and all reasons why the asserted affirmative defense did not bar their gross negligence claim.

The Charbonnets' response argued that summary judgment was improper because there had not been adequate time for discovery and because the release was not conspicuous. The Charbonnets' response did not, however, present any argument regarding the possible public policy in Texas prohibiting an advance waiver of liability for gross negligence. Thus, this argument was not preserved for our review. TEX. R. CIV. P. 166a(c); *see also Rosen v. National Hot Rod Ass'n*, No. 14-94-00775-CV, 1995 WL 755712, at \*6 (Tex. App.—Houston [14th Dist.] Dec. 21, 1995, writ denied) (not designated for publication) (concluding that the appellant's argument that summary judgment was improper because the release was against public policy was not preserved for review because it was not presented to the trial court in the appellant's response).

The Charbonnets presented their public-policy argument for the first time in their motion for new trial. For the reasons explained below, however, the motion for new trial also did not preserve the claim for appellate review. We review a trial court's decision on a motion for new trial for an abuse of discretion. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 213 (Tex. 2009).

When a motion for new trial is filed after the rendition of summary judgment, "a trial court has the discretion to consider the grounds in a post-judgment motion and supporting proof[,] and reaffirm its summary judgment based on the entire record." TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 7.06[1] (3d ed. 2012); *see also Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The trial court also has the discretion to simply deny a motion filed after the entry of summary judgment without considering its substance. *First Gibraltar Bank, FSB v. Farley*, 895 S.W.2d 425, 430 (Tex. App.—San Antonio 1995, writ denied). In the latter situation, an appellate court need only consider arguments and evidence presented prior to the summary-judgment hearing. TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 7.06[1] (3d ed. 2012); *see also Laurel v. Herschap*, 5 S.W.3d 799, 802 (Tex. App.—San Antonio 1999, no pet.). "Thus, the efficacy of a post-judgment motion to preserve a complaint for appellate review depends upon whether the trial court affirmatively considers the new grounds and proof as memorialized by a written order." TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 7.06[1] (3d ed. 2012) (citing *Auten*, 209 S.W.3d at 701; *Stephens v. Dolcefino*, 126 S.W.3d 120, 133–34 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)).

The Charbonnets' motion for new trial was overruled by operation of law. Because the trial court did not sign a new order affirmatively indicating its consideration of the Charbonnets' motion-for-new-trial claims, the Charbonnets' contention that they asserted a claim for gross negligence and that it could not be released under the public policy of Texas was not preserved for appellate review.

### MOTION FOR CONTINUANCE

In their first point of error, the Charbonnets contend the trial court's summary judgment was premature because "there was a substantial amount of discovery yet to be completed."

Although Texas Rule of Civil Procedure 166a(i) requires a party to wait until there has been adequate time for discovery before moving for a no-evidence summary judgment, Rule 166a(a) permits a party to file a traditional motion for summary judgment "at any time after the adverse party has appeared or answered." TEX. R. CIV. P. 166a(a), (i); *Reynolds v. Murphy*, 188 S.W.3d 252, 258 n.8 (Tex. App.—Fort Worth 2006, pet. denied). Furthermore, even if this were an exceptional case where discovery should be permitted before a traditional motion for summary judgment can be granted, we hold that the parties had an adequate opportunity to obtain discovery. *See Reynolds*, 188 S.W.3d at 258 n.8 (citing *Nelson v. PNC Mortgage Corp.,* 139 S.W.3d 442, 446 (Tex. App.—Dallas 2004, no pet.)) (explaining that a traditional motion for summary judgment may not be appropriately granted in some rare, factually specific cases if there has not been adequate time for discovery).

In order to preserve a claim of inadequate opportunity for discovery, the party requesting additional time must file an affidavit stating its reasons for needing additional discovery or a verified motion for continuance. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). Charbonnet preserved her claim by filing a verified motion for continuance that sought more time to obtain depositions of Appellees' corporate representatives and others. This motion was denied by the trial court.

We review a trial court's denial of a motion for continuance for an abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *Tenneco*, 925 S.W.2d at 647. "A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Joe*, 145 S.W.3d at 161. When reviewing a trial court's denial of a motion for continuance seeking additional time for discovery, we consider the following nonexclusive list of factors: (1) how long the suit has been pending; (2) the materiality of and reason for the discovery sought; and (3) whether due diligence has been

exercised to obtain the discovery sought. *Id.*; *City of San Antonio v. En Seguido, Ltd.*, 227 S.W.3d 237, 240 (Tex. App.—San Antonio 2007, no pet.). Rule 166a "does not require that discovery be completed, only that there was adequate time for discovery." *Rankin v. Union Pacific R.R. Co.*, 319 S.W.3d 58, 67 (Tex. App.—San Antonio 2010, no pet.).

All three of the factors mentioned above weigh against the Charbonnets. First, the Charbonnets' suit was filed on April 15, 2011, and the first motion for summary judgment was not filed until April 27, 2012. In addition, no hearing on the motions for summary judgment was held until June 25, 2012. Accordingly, the Charbonnets had over a year to conduct discovery. The Charbonnets contend they need additional time for discovery because the last answer to their latest amended petition was filed only three weeks before the motion for summary judgment was filed. This fact, however, is of little significance. The motions for summary judgment in this case were predicated on the affirmative defense of release of liability, and release of liability was first asserted as a defense to the Charbonnets' claim in an original answer filed on May 13, 2011. Therefore, the Charbonnets had knowledge of and could have sought discovery related to the release for almost a year before the motions for summary judgment were filed.

With regard to the materiality of and reason for needing additional discovery, the Charbonnets provide no specific reason why the additional depositions are material to their case. Instead, the Charbonnets generally assert that they need the deposition of various corporate representatives and "other individuals with knowledge of relevant facts surrounding the putative release." The Charbonnets do not name most of the corporate representatives or "other individuals" they seek to depose, nor do they state what information they expect any of these individuals to provide. *See* TEX. R. CIV. P. 252. Moreover, it is unlikely that any further testimony or evidence would aid the trial court in its decision on Appellees' motions for

summary judgment because the validity of a release of liability is a question of law to be decided by the court. *Dresser*, 853 S.W.2d at 509.

Finally, the Charbonnets have wholly failed to make a showing of due diligence. Although the Charbonnets contend they had an agreement with Appellees that multiple other corporate representatives and witnesses would be produced for depositions, they cite no evidence of such agreement. In contrast, Appellees point to a Rule 11 Agreement made on January 9, 2012 that shows the parties' agreement that Farouk would produce Andrew Guerra for deposition in February. The agreement also reflects Appellees' intention to "file their summary judgment motion on the release and have it set for hearing as soon as possible." Thus, this agreement reflects the Charbonnets' intention to allow the summary-judgment motions to proceed in exchange for the opportunity to depose Guerra.

Based on the length of time the Charbonnets had notice Appellees were asserting the release of liability as an affirmative defense, the vague and general assertions of the need for additional discovery, and the absence of evidence suggesting the exercise of due diligence in obtaining discovery prior to the filing of the motion for summary judgment or the hearing thereon, we conclude the trial court did not abuse its discretion in denying the Charbonnets' motion for continuance.

## CONCLUSION

Because the release signed by Cathy was conspicuous and because the Charbonnets had adequate time to obtain discovery, we conclude the trial court did not err in granting summary judgment in favor of Appellees. The Charbonnets' remaining claims were not properly preserved for appellate review. Accordingly, we overrule the Charbonnets' points of error and affirm the judgment of the trial court.

Catherine Stone, Chief Justice