Reversed and Remanded and Majority and Dissenting Opinions filed
November 2, 2006








Reversed
and Remanded and Majority and Dissenting Opinions filed November 2, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00393-CV

_______________

 

EVELYN AUTEN AND ELDON AUTEN, Appellants

 

V.

 

DJ CLARK, INC., D/B/A DOUBLE ARCHES CORPORATION,

DONALD E. CLARK, AND JANET C. CLARK, Appellees

                                                                                                                                               


On Appeal from the 56th District Court

Galveston County, Texas

Trial Court Cause No. 03CV0570

                                                                                                                                                

 

O P I N I O N








Appellants, Evelyn Auten and Eldon
Auten (Athe Autens@), sued appellees, D.J. Clark, Inc.
d/b/a Double Arches Corporation, Donald E. Clark, and Janet C. Clark
(collectively Athe Clarks@), for personal injuries.  The Autens filed suit before
limitations expired, but they did not serve the Clarks until more than a year
after limitations expired.  The trial court granted summary judgment in favor
of the Clarks on the ground that the Autens= suit was barred by the statute of
limitations because they did not exercise due diligence to serve the Clarks. 
In their sole issue, the Autens contend the trial erred by granting summary
judgment.[1]  Because the
Autens raised a genuine issue of material fact on whether they exercised due
diligence to serve the Clarks, we reverse and remand.

I.  Standard
of Review

In order to Abring suit@ within the applicable limitations
period, a plaintiff must both file suit within the limitations period and use
due diligence to serve the defendant with process.  Gant v. DeLeon, 786
S.W.2d 259, 260 (Tex. 1990); Belleza‑Gonzalez v. Villa, 57 S.W.3d
8, 11 (Tex. App.CHouston [14th Dist.] 2001, no pet.).   If a plaintiff files
suit within the limitations period, but serves the defendant after the
limitations period has expired, the date of service relates back to the date of
filing if the plaintiff exercises due diligence in obtaining service.  Gant,
786 S.W.2d at 260; Brown v. Shores, 77 S.W.3d 884, 887 (Tex. App.CHouston [14th Dist.] 2002, no pet.); Belleza‑Gonzalez,
57 S.W.3d at 11.  A plaintiff is not required to use the highest degree of
diligence to procure service, but is required to use the degree of diligence
that an ordinarily prudent person would have used under the same or similar
circumstances.  See Belleza‑Gonzalez, 57 S.W.3d at 12; Valdez
v. Charles Orsinger Buick Co., 715 S.W.2d 126, 127 (Tex. App.CTexarkana 1986, no writ); Beavers
v. Darling, 491 S.W.2d 711, 714 (Tex. Civ. App.CWaco 1973, no writ).








To obtain summary judgment on the
ground that a suit was not served within the limitations period, a defendant
must show that, as a matter of law, the plaintiff did not exercise due
diligence to effect service.  See Gant, 786 S.W.2d at 260; Brown,
77 S.W.3d at 887.  Generally, the question of diligence is a question of fact,
but if no excuse is offered for a delay in the service of citation, Aor if the lapse of time and the
plaintiff=s acts are such as conclusively negate diligence, a lack of diligence
will be found as a matter of law.@  Belleza‑Gonzalez, 57 S.W.3d at 12; Valdez, 715
S.W.2d at 127.  When a defendant has affirmatively pleaded the defense of
limitations and shown that the plaintiff failed to timely serve the defendant,
the burden shifts to the plaintiff to explain the delay.  Murray v. San
Jacinto Agency, Inc., 800 S.W.2d 826, 830 (Tex. 1990); Brown, 77
S.W.3d at 887; see Belleza‑Gonzalez, 57 S.W.3d at 11.  Once the
plaintiff presents an explanation, the burden shifts back to the defendant to
show why that explanation is insufficient as a matter of law.  Carter v.
MacFadyen, 93 S.W.3d 307, 313 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied); see Belleza‑Gonzalez, 57 S.W.3d at 11.

We review a summary judgment de
novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  We take as true all evidence favorable to the nonmovant, and we indulge
every reasonable inference and resolve any doubts in the nonmovant=s favor.  Id.

II. 
Discussion

The Autens claim Mrs. Auten was
injured on May 15, 2001 when she fell at a McDonald=s restaurant owned and operated by
the Clarks.  Therefore, the limitations period expired on May 15, 2003.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 16.003 (Vernon Supp. 2006)
(prescribing two-year statute of limitations for personal injury suits).  In
their motion for summary judgment, the Clarks presented undisputed proof that
the Autens filed suit on May 12, 2003Cthree days before limitations
expired, but they did not serve the Clarks until May 20, 2004Cjust over a year after limitations
expired. 

In response to the motion for summary
judgment, the Autens presented evidence explaining the delay and their attempts
to procure service.  The Clarks suggest that the Autens= explanations are insufficient as a
matter of law.[2]  We disagree
and conclude the Autens raised a genuine issue of material fact on whether they
exercised due diligence to serve the Clarks.  The Autens= attempts to procure service during
the year-long delay can be divided into three distinct periods as follows:








May 30, 2003 to July 12, 2003:
Process Server Attempts Service Unsuccessfully Five Times and Executes
Affidavits To Support Substituted Service:

The Autens first attempted service
using a process server on May 30, 2003Cabout two weeks after limitations
expired.[3]  From May 30,
2003 to June 17, 2003, the process server tried unsuccessfully to serve the
Clarks on five occasions:

!                                                                  
5-30-03          The process
server received no answer at the address for the Clarks shown in the petition. 
He left a business card and asked the Clarks to contact him.[4]

 

!                                                                  
5-31-03          A relative
informed the process server the Clarks had moved to a different address around
the corner.  The process server received no answer at this other address
although two vehicles were present.  He again left his business card and asked
them to contact him.

 

!                                                                  
6-2-03            The process
server again received no answer at this other address.  The business card he
previously left was gone, so he left another and again asked them to contact
him.

 

!                                                                  
6-3-03            The process
server returned to this other address and spoke with the Clarks= son who stated they were not home and he would give
them the business card.

 

!                                                                  
6-17-03          The process
server again returned to this other address and spoke with the Clarks= son who stated they were not home, so the process
server left his business card again.

 








The process server then advised the
Autens= counsel of his efforts.  Counsel
requested that he sign affidavits to support motions for substituted service. 
On July 12, 2003, the process server executed three affidavits, describing his
attempts to serve the Clarks and opining they were evading service and could be
served by affixing the citation to the front door of this other address at
which he had attempted service or leaving it with someone over the age of
sixteen.[5] 

The Clarks suggest that the Autens= explanation regarding this period
was insufficient.  They cite Roberts v. Padre Island Brewing Co., in
which the court stated that it is the responsibility of the person requesting
service, not the process server, to see that service is properly accomplished,
and Athe plaintiff=s reliance on a process server does
not constitute due diligence.@  28 S.W.3d 618, 621 (Tex. App.CCorpus Christi 2000, pet. denied). 
However, when making this statement, the court cited its earlier decision in Gonzalez
v. Phoenix Frozen Foods, Inc.  See id. (citing Gonzalez v.
Phoenix Frozen Foods, Inc., 884 S.W.2d 587, 589B90 (Tex. App.CCorpus Christi 1994, no writ)).  The Gonzalez
court actually stated that Amere reliance@ and Amisplaced reliance@ on a process server do not
constitute due diligence.  See Gonzalez, 884 S.W.2d at 590.[6] 
The Roberts and Gonzalez courts did not hold that using a process
server to attempt service can never constitute due diligence.  See Roberts,
28 S.W.3d at 620B21; Gonzalez, 884 S.W.2d at 590.








In Roberts, the process server
retained by the plaintiff never served the defendant, and another individual
ultimately achieved service sixty-eight days after limitations expired.  See
28 S.W.3d at 621.  The court held that the plaintiff did not exercise due
diligence as a matter of law because a reasonable person in the same or similar
circumstances would have sought service by some alternative means.  See id. 
Notably, there is no indication the plaintiff outlined the process server=s attempts, if any, to effect
service.  See id. at 621B22.  Rather, the plaintiff merely asserted that she
repeatedly attempted to contact the process server and the district clerk=s office about the status.  See
id. at 621.           

In contrast, here, the evidence shows
the process server persistently tried to serve the Clarks five times over a
two-and-a-half week period.  When a relative informed him on his first visit
that the Clarks had moved, he immediately attempted service at the other
address provided and returned four times.  Although he waited two weeks before
his last visit, this wait was not necessarily unreasonable considering he had
personally left his business card with their son on his previous visit. See
Taylor v. Rellas, 69 S.W.3d 621, 623 (Tex. App.CEastland  2002, no pet.) (finding
fact issue on due diligence although process servers took over a month to serve
defendant and this period included fifteen-day and twenty-day delays between
attempts).  Moreover, the Autens= counsel did not simply defer to the
process server for some lengthy period because, at counsel=s request, the process server
executed affidavits to support motions for substituted service approximately
three weeks after his last attempt.  Thus, the evidence indicates more than Amere reliance@ or Amisplaced reliance@ on the process server.








In sum, after limitations expired,
approximately two months passed while the Autens attempted unsuccessfully to
serve the Clarks personally via a process server and prepared to file motions
for substituted service.  We conclude that it was not necessarily unreasonable
to attempt personal service for two months before seeking court intervention
through motions for substituted service.  See Tate v. Beal, 119
S.W.3d 378, 380B81 (Tex. App.CFort Worth 2003, pet. denied) (finding fact issue on whether
plaintiff used due diligence during three-month period after limitations
expired, considering she attempted service two weeks after limitations expired
but had incorrect address, located correct address, requested second citation,
and hired process server who achieved service); Cf. Gonzalez, 884 S.W.2d
at 590 (finding lack of due diligence where plaintiffs= attorney simply relied on process
server=s misrepresentation that Athe matter was taken care of@ for fourteen months after suit was
filed because a diligent attorney would have noticed defendant had not filed an
answer and contacted court clerk to check the status).

Second Week of July 2003 to October
7, 2003: Counsel=s Legal Assistant Lapses Into Coma
and Subsequently Dies; Counsel is Incapacitated by Serious Illness but
Ultimately Files Motions for Substituted Service.

Counsel=s plan to seek substituted service
was then interrupted.  During the second week of July 2003Cabout the time the process server
executed his affidavitsCcounsel=s only legal assistant collapsed during church and fell into
a coma.  She remained in a coma until she died on July 26, 2003.  She had been
responsible for maintaining counsel=s files, contacting courts and
process servers, and ensuring service was effected in this case.  Upon her
death, counsel tried to locate and hire a new legal assistant.  Further,
counsel faced the task of determining the stages of his cases.  Counsel
determined that the Clarks had not been served and the legal assistant had been
preparing to obtain substituted service. 

Meanwhile, counsel developed a
life-threatening infection himself in late July or early August 2003.  He was
hospitalized from August 19, 2003 until August 22, 2003.  When he was discharged,
he continued to receive antibiotics intravenously and was ordered to strict bed
rest for two weeks (until September 5, 2003).  During this time, he was unable
to tend to business matters.  At the beginning of September 2003, he hired a
new legal assistant.  On October 7, 2003, the Autens filed three motions for
substituted service, requesting authorization to serve each of the Clark
defendants by leaving the citation at their address with anyone over the age of
sixteen or on their door.  In sum, the Autens filed the motions approximately
three months after the process server executed his affidavits.  








Before considering the sufficiency of
the Autens= explanation for this delay, we must address the Clarks= contention that we may not consider
the evidence regarding counsel=s illness because it was filed late without leave of court. 
The Autens first mentioned counsel=s illness in his supplemental
affidavit attached to the Autens= supplemental response to the motion
for summary judgment.  The Autens filed the supplemental response after the
summary judgment hearing, but before the trial court granted summary judgment;
thus, it was filed late.  See Tex.
R. Civ. P. 166a(c) (providing that, except on leave of court, non-movant
must file its response and opposing summary judgment evidence no later than seven
days before the summary judgment hearing).  There is no indication in the
record that the trial court accepted the late-filed response.  

However, after the trial court signed
the order granting summary judgment, the Autens filed a motion for new trial
and attached another affidavit by counsel describing his illness.  AA trial court may accept summary
judgment evidence filed late, even after summary judgment, as long as the court
affirmatively indicates in the record that it accepted or considered
the evidence.@  Stephens v. Dolcefino, 126 S.W.3d 120, 133B34 (Tex. App.CHouston [1st Dist.] 2003, pet. denied)
(emphasis added); see Mathis v. RKL Design/Build, 189 S.W.3d 839, 843B44 (Tex. App.CHouston [1st Dist.] 2006, no pet.)
(same); see also Benchmark Bank v. Crowder, 919 S.W.2d 657, 663 (Tex.
1996) (recognizing that, unless the record affirmatively indicates trial court
permitted the late filing of summary judgment evidence, the appellate court
must presume the trial court did not consider the late-filed evidence); Brown,
77 S.W.3d at 886 (same).  

In its order denying the motion for
new trial, the trial court stated, Aafter considering Plaintiffs= Motion for New Trial, the response,
affidavits, the pleadings in this matter, and other evidence on file, this
Court is of the opinion that such motion should hereby be Denied.@  Therefore, the trial court
affirmatively indicated that it considered the affidavit attached to the motion
for new trial although it denied the motion, effectively reaffirming its
earlier ruling.  Accordingly, we may consider the affidavit.  See Stephens,
126 S.W.3d at 133B34 (considering, on appeal from summary judgment in favor of
defendant, evidence presented by plaintiffs at hearing on their motion for new
trial because trial court stated at hearing that it would include the evidence
in the summary judgment record, although it denied the motion for new trial,
effectively reaffirming its earlier ruling).[7]








The Clarks again suggest the Autens= explanation regarding this period is
insufficient.  They contend the Autens cannot rely on any failures on the part
of their counsel or his legal assistant to show due diligence because the
actions of a legal assistant are imputed to the attorney, whose actions, in
turn, are imputed to his client.  See Agristor Credit Corp. v.
Donahoe, 568 S.W.2d 422, 426 (Tex. Civ. App.CWaco 1978, writ ref=d n.r.e.) (citing Petro‑Chem.
Transp., Inc. v. Carroll, 514 S.W.2d 240, 246 (Tex. 1974)).  However, the
evidence does not conclusively establish a lack of diligence on the part of the
legal assistant or counsel to be imputed to the Autens.  

The legal assistant and counsel
obviously did not abandon the substituted service through mere inaction
considering they were both incapacitated during some of this period.  We
recognize counsel did not explain the steps he took to ascertain the status of
his cases while he was not incapacitated and exactly when he learned the status
of this case.  Nonetheless, he experienced two unusual hardships during this
period.  We can reasonably infer that it would take some time for an attorney
to resume the normal operation of a law practice after his only assistant
lapses into a coma and subsequently dies and after he has been incapacitated
due to a serious illness.  








In light of these hardships, the
three-month delay before counsel filed the motions for substituted service does
not negate due diligence as a matter of law.[8] 
See Edwards v. Kaye, 9 S.W.3d 310, 314B15 (Tex. App.CHouston [14th Dist.] 1999, pet.
denied) (finding fact issue on due diligence despite three-month delay between
expiration of limitations and notification to counsel that citation had not
issued, considering counsel was in trial out of town during the first half of
this period and promptly requested issuance of citation when notified it had
not issued); Valdez, 715 S.W.2d at 127B28 (finding fact issue on due
diligence despite eight-month delay between expiration of limitations and
service, including five-month delay between counsel=s request for issuance of citation
and first attempt to discover why it had not been served, during which the law
clerk who handled the case left the firm and counsel subsequently became more
familiar with and monitored the file).  

December 19, 2003 to May 20, 2004:
Counsel Follows Up With Clerk=s Office on Status of Substituted
Service Nine Times Before Citations Are Issued and Served:

The next activity occurred on
December 19, 2003, when the Autens= counsel contacted the district clerk=s office to follow up on the request
for substituted service.  Between December 19, 2003 and April 30, 2004, he
contacted the clerk=s office nine times:

!                                                                  
12-19-03        Counsel=s new legal assistant called the clerk=s office and was told the substituted service had been
Aoverlooked@
and would be immediately Asent out.@

 

!                                                                  
1-26-04          The legal
assistant called the clerk=s office and
was told the order allowing substituted service had not been signed and was
assured it would be signed.

 

!                                                                  
2-10-04          The legal
assistant called the clerk=s office and
was told that a citation could not be served without an $8.00 fee, so counsel
issued a check to the clerk for that amount.

 

!                                                                  
3-15-04          The legal
assistant called the clerk=s office and
was told that the fee had not been received, so counsel issued another check
for $8.00.

 

!                                                                  
3-17-04          The legal
assistant called the clerk=s office and
was told the fee had been received and citation would be issued.

 








!                                                                  
4-7-04            The legal
assistant called the clerk=s office and
was told that another $8.00 fee was required, the clerk=s office had no instructions regarding whom to serve
or where to effect service, and the clerk=s
office needed copies of the petition and motion for substituted service.[9] 
That day, the legal assistant wrote to the clerk complaining about the
inability to obtain substituted service thus far.

 

!                                                                  
4-12-04          Counsel chose to
bypass the clerk=s office and requested that the clerk send the
citations to Attorney Services of Greater Houston.

 

!                                                                  
4-27-04          Attorney Services
of Greater Houston informed counsel=s
office that it twice called the clerk=s
office but still had not received the citations.

 

!                                                                  
4-30-04          Counsel=s office again called the clerk=s office and was told that all the
citations had been sent to Attorney Services of Greater Houston the day before.[10] 

On May 20, 2004, the Clarks were
servedCapproximately seven months after the
Autens filed the motions for substituted service.  

The Clarks also assert the Autens= explanation regarding this period is
insufficient.  The Clarks acknowledge the clerk=s office may have contributed to the
delay, but contend the Aoverwhelming majority@ of the delay was due to counsel=s failure to follow up.  We
disagree.  The evidence indicates the clerk=s office bore a good deal of
responsibility for the delay because it Aoverlooked@ the motions for substituted service,
and the orders were not signed until at least several months after the motions
were filed.  Nonetheless, counsel waited approximately two-and-a-half months
after he filed the motions to first follow up on the status.








The Clarks cite Boyattia v.
Hinojosa, in which service on one defendant was effected after limitations
expired because there was a three-month unexplained delay between the clerk=s issuance of a citation and delivery
of the citation to the constable.  18 S.W.3d 729, 732B33 (Tex. App.CDallas 2000, pet. denied).  The court
stated that a party may ordinarily rely on the clerk to perform his duty to
issue and deliver citations within a reasonable time.  See id. at 734.[11] 
The court further recognized that parties have limited control over a clerk=s actions, and a party may be
vigilant and vigorous in urging the clerk to issue and deliver a citation to no
avail.  Id.  Thus, when the clerk delays in issuing or delivering a
citation, the passage of time alone is not controlling on the issue of a party=s diligence.  Id.  Instead,
courts look to whether a party=s actions manifest a Abona fide intention@ to have process served.  Id. 
When a party learns, or by exercise of diligence should have learned, that the
clerk has failed to fulfill his duty, it is incumbent on the party to ensure
the job is done.  Id.  The court concluded that the plaintiff failed to
exercise due diligence because three months is not a reasonable time for the
clerk to deliver a citation; therefore, the plaintiff should have known the
clerk was not fulfilling his duty and was obligated to make an effort to ensure
delivery.   Id.








Here, the Autens were waiting on more
than just the clerk=s delivery of citations that had already been issued.  The
substituted service required the trial court=s authorization before the citations
could issue.  See Tex. R. Civ. P.
106(b).  Counsel certainly had limited control over the trial court=s timing with respect to signing the
three requested orders, particularly considering that it is within a trial court=s discretion whether to authorize
substituted service after a proper supporting affidavit is filed.  See id.;
Coronado v. Norman, 111 S.W.3d 838, 841 (Tex. App.CEastland 2003, pet. denied).  We
cannot penalize the Autens= counsel for giving some respectful deference to the trial
court with respect to ruling on the motions on its own timing.  Therefore, the
two-and-a-half-month delay before the first follow-up contact is not so
unreasonable that it negates due diligence as a matter of law.  We find at
least an issue for the trier of fact on whether counsel acted as an ordinarily
prudent person under the same or similar circumstances by waiting this length
of time to follow up.

Moreover, after his first contact,
counsel contacted the clerk=s office eight times over a four-and-a-half month period to
follow up on the status of the substituted service.  The shortest delay between
contacts was two days while the longest delay was slightly more than a month. 
These regular contacts are evidence of a Abona fide intention@ to obtain substituted service.  See
Valdez, 715 S.W.2d at 128 (finding fact issue on due diligence where
evidence included plaintiff counsel=s explanation that, once he
determined defendant had not been served, he made various calls to sheriff=s office and clerk=s office over a three-month period
before learning citation fee had not been paid); see also Bilsing v.
State Indus., Inc., 173 F. Supp. 2d 593, 599 (S.D. Tex. 2001) (finding fact
issue on due diligence where inexplicably court=s order allowing service via private
process server was entered by the clerk two months after it was signed, and
plaintiff contacted the clerk=s office once a month to check on the status). 

Finally, the Clarks point out that
counsel=s failure to pay the required fees
for service on three defendants contributed somewhat to the delay in the clerk=s issuance of the citations for
substituted service.[12]  However,
the clerk=s office did not inform counsel that additional fees were required until
after he had made several calls to follow up on the citations.  Significantly,
counsel paid the additional fees once he learned they were required.  Thus, we
can reasonably infer that his original failure to pay all the required fees was
caused by mere inadvertence on his part, coupled with a miscommunication with
the clerk=s office. 








A miscalculated attempt to effect
service due to inadvertence or miscommunication may raise a fact issue on due
diligence while inactivity or complete failure to attempt service due to a
miscommunication negates due diligence as a matter of law.  See Keeton v.
Carrasco, 53 S.W.3d 13, 24B25 (Tex. App.CSan Antonio 2001, pet. denied).  Considering counsel=s overall efforts to follow up on the
status of the substituted service, his failure at one point to pay all the required
fees does not negate due diligence as matter of law. See Valdez
715 S.W.2d at 127B28 (finding fact issue on due diligence where service on one
defendant was delayed because plaintiff sued two defendants, but counsel paid
only one citation fee, believing it was sufficient for service on both
defendants due to a miscommunication between his firm and clerk=s office); Saenz v. Keller Indus.
of Texas, Inc., 951 F.2d 665, 666B68 (5th Cir. 1992) (finding fact
issue on due diligence although delay in issuance and service of citation was
caused by plaintiff counsel=s failure to submit required summons request form due to
miscommunication with clerk=s office, coupled with his failure to observe local rules).

III. 
Conclusion








Although the Autens served the Clarks
slightly more than a year after limitations expired, this case does not involve
extended, unexplained delays without any attempts at service.  Rather, the
Autens explained the delays and their attempts to procure service, and the
Clarks failed to show that these explanations are insufficient as a matter of
law.[13]  Therefore,
the Autens have raised a genuine issue of material fact on whether they
exercised due diligence to procure service.  Compare Martinez v. Becerra,
797 S.W.2d 283, 285 (Tex. App.CCorpus Christi 1990, no writ) (finding fact issue on due
diligence despite fifteen-month delay in service after limitations expired
where plaintiff=s counsel outlined efforts to obtain service); Valdez,
715 S.W.2d at 127B28 (finding fact issue on due diligence despite eight-month
delay where counsel explained attempts to procure service); with Gant,
786 S.W.2d at 259B60 (finding lack of due diligence as a matter of law where
plaintiffs served the defendant six years after limitations expired and failed
to explain three separate periods of delay consisting of six months, twenty
months, and twelve months); Williams v. Houston Citizens Bank & Trust
Co., 531 S.W.2d 434, 435B36 (Tex. Civ. App.CHouston [14th Dist.] 1975, writ ref=d n.r.e) (finding lack of due
diligence as a matter of law based on unexplained delay of thirteen months
between expiration of limitations and service, including seven-month delay
between return of first unserved citation and issuance of second citation).

Accordingly, the trial court erred by
granting summary judgment in favor of the Clarks on the ground the suit was
barred by the statute of limitations.  We sustain the Autens= sole issue.   We reverse the trial
court=s judgment and remand for further
proceedings consistent with this opinion.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Majority and Dissenting
Opinions filed November 2, 2006.

Panel consists of Justices Hudson,
Fowler, and Seymore.  (Hudson, J., dissenting).









[1]  The Autens also sued McDonald=s Corporation, but the trial court granted McDonald=s Corporation=s
motion for summary judgment, and the Autens do not appeal that order.





[2]  The appellate record does not contain any reply by
the Clarks to the Autens= response to the motion for summary judgment. 
Nonetheless, the Clarks apparently anticipated the Autens= explanations because, in their motion for summary
judgment, the Clarks suggested reasons the explanations are allegedly
insufficient. 





[3]  The Autens did not affirmatively demonstrate their
activity during this two-week period. However, we can reasonably infer that
citations issued and they retained a process server because he first attempted
service two weeks after limitations expired.





[4]  In their petition, the Autens asserted that D.J.
Clark, Inc. d/b/a Double Arches Corporation could be served through Donald E.
Clark, its registered agent and that Donald E. Clark and Janet Clark could be
served at the same address.  Thus, the process server tried to serve all three
appellees at the same address. 





[5]  See Tex.
R. Civ. P. 106(b) (allowing trial court, upon motion supported by
affidavit stating defendant=s usual abode
and unsuccessful attempts at personal service at that location, to authorize
service by leaving citation with anyone over age sixteen or in some other
manner the affidavit shows will be reasonably effective to give notice).





[6]  See also Bilsing v. State Indus., Inc., 173
F. Supp. 2d 593, 598 (S.D. Tex. 2001) (citing  Gonzalez as stating that Amisplaced reliance@ on
process server does not constitute due diligence); Taylor v. Thompson, 4
S.W.3d 63, 65 (Tex. App.CHouston [1st Dist.] 1999, pet. denied) (same).  





[7]  See also K‑Six TV. v. Santiago, 75
S.W.3d 91, 96B97 (Tex. App.CSan
Antonio 2002, no pet.) (considering, on appeal, late-filed summary judgment
response where trial court=s order denying
motion for summary judgment recited that it considered the response); Oryx
Energy Co. v. Union Nat=l Bank, 895 S.W.2d 409, 412 n.3 (Tex. App.CSan Antonio 1995, writ denied) (holding, on appeal
from summary judgment, that evidence attached to motion to reconsider was
properly before appellate court where trial court=s order denying motion recited that the evidence was Adeemed timely filed@); Cf.
McMahan v. Greenwood, 108 S.W.3d 467, 499B500 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (refusing to
consider additional evidence attached to motion for new trial following summary
judgment where record did not affirmatively indicate trial court considered the
additional evidence or party requested leave to file additional evidence). 





[8]  Even if we could not consider the late-filed
evidence regarding counsel=s illness, we
would still find a genuine issue of material fact on whether the Autens
exercised due diligence during this period based on the unusual hardship caused
by the legal assistant=s coma and subsequent death.





[9]  The copy of the motion for substituted service on
Donald E. Clark attached to the Autens=
summary judgment response is missing two pages of the supporting affidavit.  We
cannot determine whether the pages were missing from the motion that was
actually filed or just missing from the copy attached to summary judgment
response.  Regardless, it does not appear that any pages missing from the
actual motion contributed to the delay because the clerk=s office suggested all the motions had been Aoverlooked@
and later requested a copy of all the motionsCnot just the missing pages, if any. 





[10]  The citations indeed reflect that they were issued
on April 29, 2004.





[11]  See also Tex.
R. Civ. P. 99(a) (providing that, upon filing of the petition, the
clerk, when requested, shall forthwith issue a citation and deliver the
citation as directed by the requesting party).





[12]  This failure to pay all the required fees contributed
only partly to the delay because it took at least several months for the orders
allowing substituted service to be signed before the fees even became an
issue.  





[13]  I respectfully submit that our dissenting colleague
does not fully appreciate the vagaries of managing a civil litigation practice.