**Jesus BELLEZA–GONZALEZ,**
**Appellant,**

**v.**

**Concepcion VILLA and Mario**
**P. Villa, Appellees.**

**No. 14–00–00605–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 14, 2001.

Armando Lopez, Houston, TX, for appellants.

Harold L. Sosebee Jr., Houston, TX, for appellees.

Panel consists of Justices YATES, WITTIG, and Senior Justice MURPHY *.

## MAJORITY OPINION

MURPHY, Senior Chief Justice (Retired).

Appellant, Jesus Balleza–Gonzalez, sued appellees, Concepcion and Mario P. Villa, for damages arising from a car accident. The Villas moved for summary judgment, urging the affirmative defense of statute of limitations. Although Gonzalez filed suit within the two-year limitations period applicable to this personal injury suit, the Villas filed a motion for summary judgment, claiming that they were not served during the two-year limitations period, and that Gonzalez failed to exercise due diligence in serving the Villas. The trial court granted the Villas' motion for summary judgment. In one issue for review, Gonzalez contends that the trial court

---

* Senior Chief Justice Paul C. Murphy sitting by assignment.

erred in granting the Villas' motion for summary judgment because genuine issues of material fact exist as to whether Gonzalez used due diligence in effecting service. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Gonzalez and Concepcion Villa were involved in a car accident on December 10, 1996, in Harris County. Concepcion was driving Mario P. Villa's car at the time of the accident. Gonzalez sued Concepcion for negligence, and sued Mario for negligent entrustment of a motor vehicle.

Gonzalez started seeking chiropractic care from Karen S. Thomason, D.C. for injuries sustained in that accident. Prior to filing this suit, Gonzalez and his attorney had been attempting to obtain his medical records from Dr. Thomason. In late November and early December of 1998, Gonzalez's attorney spoke with an unnamed insurance adjustor from State Farm, the Villas' insurance carrier. Gonzalez's attorney told the insurance adjustor that he and Gonzalez had been unable to obtain either Dr. Thomason's medical narrative, or a copy of the medical records. Gonzalez's attorney expressed to the adjustor that this would preclude Gonzalez from making a reasonable settlement demand. Not wanting to pursue a frivolous lawsuit, Gonzalez's attorney told the insurance adjustor that Gonzalez would file suit against the Villas, but would withhold service of process on them until such time as Gonzalez obtained his records from Dr. Thomason.

Gonzalez then filed suit against the Villas on December 9, 1998, just within the two-year statute of limitations. Gonzalez and his attorney continued making unsuccessful attempts to contact Dr. Thomason on a daily basis. Finally, they made a surprise visit to Dr. Thomason's office. At that time, they were informed that Dr. Thomason's office had been burglarized and that Dr. Thomason believed that Gonzalez's records had either been lost or destroyed.

On July 29, 1999, Gonzalez filed a motion to retain his case on the court's docket. In support of this motion, he explained to the trial court his difficulty in obtaining his medical records. In this motion, he stated that he had now requested service on the Villas, and proposed that upon their appearance, he would take the deposition of Dr. Thomason and proceed from there either to dismiss the case if no records were found, or to diligently prosecute the case if the records surfaced. On August 3, the trial court granted the motion to retain.

On August 4, 1999, Gonzalez requested service of process, and Concepcion Villa was served on August 11, 1999. Concepcion Villa filed his original answer on September 1, asserting a general denial and the affirmative defense of statute of limitations. The Villas filed a motion for summary judgment, urging the affirmative defense of statute of limitations. Gonzalez responded to the Villas' motion for summary judgment. Gonzalez's summary judgment proof included (1) his GTE Wireless phone bill which showed calls Gonzalez made to Dr. Thomason's office from his cellular phone; (2) the sworn affidavit of Gonzalez's trial counsel, asserting that he had an agreement with the insurance adjuster not to serve the Villas unless and until he could find the missing medical records; and (3) the sworn affidavit of Dr. Thomason, who explained that she treated Gonzalez between December 1996 and May 1997, but the treatment records had either been stolen or destroyed due to a burglary of her clinic on August 5, 1998. In Dr. Thomason's sworn affidavit, she also explained that after reorganizing the papers scattered on the floor of her office,

her staff was able to reorganize Gonzalez's file. Dr. Thomason's affidavit was supported by a copy of the Harris County Sheriff's Department Supplement Report and Citizen's Information Card regarding the burglary in question.

The court granted the Villas' motion for summary judgment. Gonzalez then filed a motion for new trial, which was denied. This appeal followed.

## DISCUSSION AND HOLDING

### A. Standard of Review

■ When a defendant moves for summary judgment on an affirmative defense, he must conclusively prove all the essential elements of his defense as a matter of law, leaving no issues of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 587 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

In determining whether a disputed issue of material fact precluding summary judgment exists, the court must review the proof in the light most favorable to the non-movant by making all reasonable inferences and resolving all doubts in favor of the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ Summary judgment may be granted when service of suit on the defendant is accomplished beyond the limitations period. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex. 1990). However, delay in the service of defendant will provide cause for dismissal of the plaintiff's petition only when the plaintiff failed to exercise due diligence in attempting to accomplish service. *Id.* The defendant bears the burden to conclusively establish the bar of limitations. *Id.* The burden then shifts back to the plaintiff to demonstrate his exercise of due diligence.

*Id.* If he can show due diligence, then the defendant must show why that exercise was insufficient to relate the date of service back to the date of filing.

### B. The Affirmative Defense of Statute of Limitations

■ The limitations period for a personal injury cause of action is two years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon Supp.2000). In order to "bring suit" within the applicable two-year limitations period, a plaintiff must both file suit within the two-year period and use due diligence to have the defendant served with process. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990). If the petition is filed within the limitations period, but the defendant is not served until the statutory period has expired, the date of service relates back to the date of filing if the plaintiff exercises due diligence in obtaining service. *Id.* at 259–60. The party requesting service must ensure service is properly accomplished. *Weaver v. E–Z Mart Stores, Inc.*, 942 S.W.2d 167, 168 (Tex.App.—Texarkana 1997, no writ).

Here, Gonzalez filed suit within the limitations period but did not serve, or make any attempt to serve, the Villas until about eight months after the limitations period expired.

Lack of due diligence in serving process on a defendant has been found as a matter of law after a five and four-fifths month delay. *Hansler v. Mainka*, 807 S.W.2d 3, 5 (Tex.App.—Corpus Christi 1991, no writ). In fact, several Texas courts have held that delays of more than a few months negate due diligence as a matter of law. *Weaver*, 942 S.W.2d at 168 (nine months); *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 590 (Tex. App.—Corpus Christi 1994, no writ) (five months); *Butler v. Ross*, 836 S.W.2d 833,

835–36 (Tex.App.—Houston [1st Dist.] 1992, no writ) (five months); *Allen v. Bentley Labs., Inc.*, 538 S.W.2d 857, 860 (Tex. Civ.App.—San Antonio 1976, writ ref'd n.r.e.) (six months).

Due diligence requires that the plaintiff exercise "that diligence to procure service which an ordinarily prudent person would have used under the same or similar circumstances." *Gonzalez*, 884 S.W.2d at 590 (quoting *Reynolds v. Alcorn*, 601 S.W.2d 785, 788 (Tex.Civ.App.—Amarillo 1980, no writ)). It also requires that the plaintiff act diligently up to the time the defendant is actually served. *Hodge v. Smith*, 856 S.W.2d 212, 215 (Tex.App.— Houston [1st Dist.] 1993, writ denied). Generally, the question of diligence is a question of fact, but if no excuse is offered for a delay in the service of citation, "or if the lapse of time and the plaintiff's acts are such as conclusively negate diligence, a lack of diligence will be found as a matter of law." *Webster v. Thomas*, 5 S.W.3d 287, 289 (Tex.App.—Houston [14th Dist.] 1999, no pet.). Additionally, an offered explanation must involve diligence to seek service of process. *Rodriguez v. Tinsman & Houser, Inc.*, 13 S.W.3d 47, 49–50 (Tex. App.—San Antonio 1999, pet. denied) (citing *Weaver*, 942 S.W.2d at 169).

This case is different than most cases involving lack of diligence. Typically, those cases involve periods of unexplained inactivity. In this case, Gonzalez claims that the eight month delay in serving process on the Villas should be excused because of an alleged oral agreement with an unnamed insurance adjuster to withhold service while Gonzalez searched for records. This case does not involve failed efforts to obtain service on the defendant. Instead, it involves intentionally waiting to serve the defendant by honoring an oral agreement made with the Villas' insurance agent.

The Villas contend that if this agreement constitutes evidence of Gonzalez's due diligence, it is, in any event, unenforceable under Rule 11 of the Texas Rules of Civil Procedure. Rule 11 provides, "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." *Id.* This was an agreement between Gonzalez's attorney and an agent of the Villas. Unless the specific requirements of Rule 11 are met, no agreements between attorneys or parties are enforceable. *London Mkt. Cos. v. Schattman*, 811 S.W.2d 550, 552 (Tex.1991) (orig.proceeding). Accordingly, when an agreement between attorneys or parties delays an appellant from obtaining service on appellees, that agreement must meet the requirements of Rule 11. *Allen v. City of Midlothian*, 927 S.W.2d 316, 320 (Tex. App.—Waco 1996, no writ).

Gonzalez argues that this agreement, being entered before the suit was filed, is not subject to Rule 11. However, once the suit was filed, this agreement became one that touched on a pending suit. As such, the agreement was governed by Rule 11. Gonzalez's misplaced reliance on an unenforceable agreement did not constitute due diligence. Had Gonzalez been diligent, he would have made certain the Villas were aware of the agreement. It seems the best way to do that would have been to get the agreement in writing and file it with the court; in other words, follow the requirements of Rule 11. As a result, Gonzalez cannot claim that he exercised "due diligence" by relying on this oral agreement. *Id.*

Accordingly, we overrule Gonzalez's sole issue for review, and affirm the trial court's judgment.

WITTIG, J., dissenting.

WITTIG, Justice, dissenting.

May a Texas State Farm adjuster agree to postpone service of process before suit is filed and then dishonor the agreement to appellant's detriment? Should "slavish adherence" to Rule 11, Tex.R. Civ. P. trump Rule 1 from the same book?

Rule 1 clearly articulates the purpose of the rules to obtain "a just, fair, equitable and impartial adjudication". Tex.R. Civ. P. 1. The nominal defendants ask us to look aside from a virtual fraud upon the court. It is undisputed, that a State Farm adjuster agreed to try to negotiate a settlement of the case in question prior to the necessity of service. It is undisputed because no one at State Farm denied the agreement. Through the nominal party, State Farm seeks "a just, fair, equitable and impartial adjudication" they seek to dismiss Jesus Belleza–Gonzalez' claim without a trial. I find this most troubling, and therefore respectfully dissent.

My biggest criticism of the majority opinion is the failure to distinguish between enforceability of an agreement and summary judgment proof. Appellant does not seek to enforce the agreement. Rather, appellant offers the pre-suit agreement as evidence or proof of diligence. Surely, appellant counsel's affidavit is proper summary judgment proof, regardless of enforceability. And, the proof is uncontradicted.

A few scant years ago this court faced very similar facts. We held that an attorney's affidavit raised a material fact issue concerning the tolling of the statute of limitations. *Duncan v. Lisenby*, 912 S.W.2d 857, 858 (Tex.App.—Houston [14th Dist.] 1995, no writ). The attorney averred "[Defendant's counsel] and I agreed to toll the statute of limitations while we pursued settlement." *Id.* We reversed the trial court's summary judgment because the proof raised a genuine issue of material fact. *Id.* Justice Anderson, joined by Justice Amidei and Chief Justice Murphy, went on to note that estoppel may bar a limitations defense when a party or his agent makes representations that induce a plaintiff to delay filing suit within the applicable limitations period. *Id.* at 859. Although the facts in *Duncan* did not support estoppel, stronger facts exist here where a party's agent materially misrepresents the abeyance of limitations, which was relied upon by plaintiff's counsel. Thereafter, the insurance company takes advantage of the misrepresentation by filing and obtaining summary judgment.

There is more than one reason to take exception to the slavish adherence to Rule 11. First, the agreement in question was consummated before there was "any suit pending." As the supreme court noted in *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex.1984), "an undisputed stipulation may be given effect despite literal noncompliance with the rule." (citations omitted). Second, an agreement in compliance with the rule is subject to attack because of fraud or mistake. *Id.* Third, a nonconforming agreement may be enforced for equitable reasons. *Id.* And fourth, Rule 11 is to be construed liberally to conform to modern trial practice. *Id.* (citing *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979)). And finally, the majority opinion goes too far by not acknowledging the fundamental right of contract, exercised here by appellant, before suit, which cannot be abrogated by a procedural rule not applicable at the instant of contract formation.

Clearly, the appellant demonstrated both his uncontroverted proof of detailed diligence and "honoring an oral agreement." Today we forget both the trial court and the appellate court are courts of law *and chancery*. We "slavishly adhere"

to a procedural rule in abrogation of the rule of justice, fairness and equity.[1] We place form over substance. We retroactively apply procedure to a substantive right of contract. And we turn a blind eye on an apparent fraud upon the court. I would reverse and remand.

**1.** Like a ship's captain, the judge must not fix her gaze solely to the right, the rule. She is summoned to sometime glance to the left, to justice and equity. There, alone, is the sound middle course between slavish adherence to the rule and the shoals of fairness.