TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-08-00320-CV






Hugh T. Mitchell, III and Janice K. Mitchell, Appellants


v.


Terrell Timmerman, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126th JUDICIAL DISTRICT

NO. D-1-GN-04-001038, HONORABLE DARLENE BYRNE, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N


 Our opinion and judgment dated November 7, 2008, are withdrawn and the following
is substituted in its place. We overrule the Mitchells' motion for rehearing.

 This is an appeal from a summary judgment that presents limitations issues. For the
reasons explained below, we will affirm the judgment.

 Spouses Hugh T. ("Tex") Mitchell, III and Janice K. ("Kim") Mitchell own residential
property at 6206 Burns Street in Austin. Immediately behind the Mitchells' property is property
owned by Terrell Timmerman at 6215 North Lamar. On Timmerman's property, near its boundary
with the Mitchells' property, is a cinder-block wall. Some of the cinder blocks within the wall are
placed sideways so as to create openings that enable rain or storm water to drain from Timmerman's
property onto the Mitchells' property, which lies at a lower elevation. The Mitchells have alleged
that these and other components of a "drain system" installed on Timmerman's property have
"diverted the natural flow of surface water" so as to damage their property.

 The Mitchells sued Timmerman on March 30, 2004, seeking damages and injunctive
relief under section 11.086 of the water code, which prohibits a person from "divert[ing] or
impound[ing] the natural flow of surface waters in this state, or permit[ting] a diversion or
impounding by him to continue, in a manner that damages the property of another by the overflow
of the water diverted or impounded." See Tex. Water Code Ann. § 11.086 (West 2008). It is
undisputed that the Mitchells' suit is governed by a two-year statute of limitations. See Graham
v. Pirkey, 212 S.W.3d 507, 512 (Tex. App.--Austin 2006, no pet.) (citing Anders v. Mallard
& Mallard, Inc., 817 S.W.2d 90, 95 (Tex. App.--Houston [14th Dist.] 1991, no writ)); see also
Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2002 & Supp. 2008). (1)

 Timmerman filed a succession of three traditional motions for summary judgment
asserting, among other grounds, that the Mitchells had failed to file suit within the two-year
limitations period. Though each of his motions raised limitations as a ground, Timmerman's
arguments and evidence in each motion were not entirely identical. In his third and final motion,
Timmerman argued chiefly that under this Court's decision in Graham v. Pirkey, 212 S.W.3d at 512,
and Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264 (Tex. 2004), any diversion of surface
water by his drainage system was "permanent" in nature, such that the Mitchells' claims would have
accrued when the system first caused injury. See Bates, 147 S.W.3d at 270 ("A permanent nuisance
claim accrues when injury first occurs or is discovered; a temporary nuisance claim accrues anew
upon each injury.") (emphasis in original); Graham, 212 S.W.3d at 512 (applying Bates's analysis
of accrual of nuisance claims to claims under section 11.086 of the water code). Timmerman
attached an affidavit wherein he testified that he had purchased his property in 1988 and that "I have
not done anything to change the flow of the surface water on my property, or altered the flow of
such water to the Mitchell's property, since I bought it," that "[t]he flow of the surface water has
remained unchanged by me since I bought the property in 1988," and that "th[e] drainage system was
installed in the 1940's, before any of the surrounding houses, including Plaintiff's, were built." (2)
Consequently, Timmerman reasoned, any claims the Mitchells owned regarding the water diversion
would have accrued years ago, and would be barred by limitations. Timmerman added that because
the drainage structure and diversion were open and obvious, the discovery rule would not apply
and that, in any event, the Mitchells had discovered damage they later attributed to water diversion
as early as 2001.

 In each of his summary-judgment motions, Timmerman also asserted the ground
that the Mitchells had failed to serve him with process within the limitations period and to act with
diligence in obtaining service thereafter. (3) However, Timmerman briefed and attached evidence in
support of this ground only in his first two motions. (4) Timmerman's summary-judgment evidence
regarding service and diligence included:



 the Mitchells' original petition, which was file-stamped on March 30, 2004.


 


 an invoice from the Mitchells' trial-level counsel reflecting that the Mitchells
had consulted with him regarding "Water code violations" as early as October
7, 2002. Timmerman relied on this date as the latest on which the two-year
limitations period possibly could have begun to run. (5) Thus, he reasoned, the
two-year limitations period would have expired on October 7, 2004, at the
latest.


 


 the citation, which was issued on February 14, 2005, and a receipt from the
Travis County District Clerk reflecting that the Mitchells' prior counsel paid
the service fee on that date.


 


 the return, which reflected that Timmerman was served on February 18, 2005.




 In response, the Mitchells presented evidence to the effect that their prior counsel
had a belief or understanding that Timmerman's prior counsel had agreed to accept service on
Timmerman's behalf or to delay service. The record includes copies of correspondence between the
parties' respective counsel and Timmerman's insurance carrier reflecting attempts to resolve the
dispute. These communications began with a December 2002 demand letter from the Mitchells and
continued through early 2005.

 A March 22, 2004 fax cover sheet from the Mitchells' prior counsel to Timmerman's
counsel states that "[m]y client has authorized me to move forward and file suit," and indicates that
a copy of the petition is attached. Counsel further inquired, "[w]ill you accept service for
Mr. Timmerman?" Concerning this fax, the Mitchells' prior counsel testified by affidavit that "I sent
a copy of the petition to [Timmerman's counsel], after which we had a number of conversations. 
As a result of those conversations, I understood that [counsel] would accept service on behalf of
Mr. Timmerman, but that we should abate proceeding with the suit, until we could work out a
resolution." Subsequently, in a December 2, 2004 fax to Timmerman's prior counsel, counsel
stated that "[m]y file reflects that in March I sent a copy of the petition filed after you agreed to
accept service on behalf of Timmerman" and that "[w]e also agreed that no answer needed to be
filed as we were working toward an amicable resolution." Timmerman's counsel responded with
communications denying prior awareness that suit had actually been filed (6) and the existence of any
agreement or authority to accept service on Timmerman's behalf. (7) The Mitchells' counsel averred
that he "was completely surprised and taken aback" by this "revocation of his agreement to accept
service," and "immediately moved forward to issue service and have Mr. Timmerman served." 
Other than the parties' competing assertions in affidavits and correspondence, there is no evidence of
any agreement whereby Timmerman's counsel would accept service on his behalf or delay service.

 The district court denied each of Timmerman's first two summary-judgment motions
but granted the third, (8) stating in its order that it "finds that no genuine issues of material fact exist,
and based in part on Graham v. Pirkey, 212 S.W.3d 507 (Tex. App.--Austin 2006), the Motion
should be granted." The Mitchells bring three issues on appeal, asserting that the district court erred
in granting summary judgment because: (1) their claimed injury from the alleged water diversion
was "temporary" rather than "permanent" as a matter of law; (2) even if their injury was permanent,
fact issues remained as to whether their injury first occurred before mid-2002; and (3) the discovery
rule tolled limitations until the fall of 2002. Timmerman brings a cross-point in which he urges
that summary judgment must be affirmed because the district court erred in denying his first and
second motions on the ground that the Mitchells, as a matter of law, failed to exercise diligence in
effecting service after the limitations period expired. Our disposition of the Mitchells' first issue and
Timmerman's cross-point is decisive.

 We review the district court's summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all
evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any
doubts in the non-movant's favor. Valence Operating Co., 164 S.W.3d at 661; Knott, 128 S.W.3d
at 215. Summary judgment is proper when there are no disputed issues of material fact and the
movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

 If the trial court does not specify the ground or grounds on which it relied in granting
summary judgment, we must affirm if any of the grounds presented in the motion were meritorious. 
State Farm Fire & Casualty Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). We also may affirm
based on an alternative ground on which the district court denied summary judgment that is raised
in the motion or motions below and argued on appeal. See Baker Hughes, Inc. v. Keco R. & D., Inc.,
12 S.W.3d 1, 5 (Tex. 1999); Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996). 
Consequently, we must consider Timmerman's diligence-in-service ground as a basis for affirming
the summary judgment.

 A defendant who conclusively negates at least one of the essential elements of each of
the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative
defense is entitled to summary judgment. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). To
obtain summary judgment on the affirmative defense of limitations, a movant must conclusively
establish when a cause of action accrued and that the plaintiff did not file suit within the limitations
period. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2008).

 Even if suit is filed within the limitations period, it is barred by limitations if
the defendant is not served within the limitations period and the plaintiff did not exercise diligence
in obtaining service. See Proulx v. Wells, 235 S.W.3d 213, 215 (Tex. 2007) (per curiam) (citing
Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 830 (Tex. 1990); Rigo Mfg. Co. v. Thomas,
458 S.W.2d 180, 182 (Tex. 1970)). Once a defendant has affirmatively pled the limitations defense
and shown that service was effected after limitations expired, the burden shifts to the plaintiff "to
explain the delay." Proulx, 235 S.W.3d at 216 (quoting Murray, 800 S.W.2d at 830). When the
burden has been shifted in this manner, "it is the plaintiff's burden to present evidence regarding
the efforts that were made to serve the defendant, and to explain every lapse in effort or period of
delay." Id. "Generally, the question of the plaintiff's diligence in effecting service is one of fact,
and is determined by examining the time it took to secure citation, service, or both, and the type
of effort or lack of effort the plaintiff expended in procuring service." Id. The "relevant inquiry is
whether the plaintiff acted as an ordinarily prudent person would have acted under the same or
similar circumstances and was diligent up until the time the defendant was served." Id. However,
the plaintiff may fail to raise a fact issue if the evidence demonstrates a lack of diligence as a matter
of law, "as when one or more lapses between service are unexplained or patently unreasonable." Id.;
see also Holt v. D'Hanis State Bank, 993 S.W.2d 237, 241 (Tex. App.--San Antonio 1999, no pet.)
(plaintiff's failure to file response to summary judgment constituted failure to explain delay, and
"[a]n unexplained delay constitutes a lack of due diligence as a matter of law"). Also, the plaintiff's
explanation may be "legally improper to raise the diligence issue." Proulx, 235 S.W.3d at 216
(citing cases involving oral agreements to delay service and plaintiff's desire to obtain remand from
federal court). But if the plaintiff's explanation for the delay raises a material fact issue concerning
the diligence of service efforts, the burden shifts back to the defendant to conclusively show why,
as a matter of law, the explanation is insufficient. Id.

 Timmerman met his summary-judgment burden to establish that he was not served
until after limitations had expired. On appeal, the Mitchells acknowledge that the Texas Supreme
Court's analysis in Bates--its seminal case regarding accrual of common law nuisance
claims--governs accrual of their claims under section 11.086. In Bates, the supreme court clarified
the application of the longstanding distinction in Texas law between "permanent" and "temporary"
nuisances for purposes of determining accrual. See Bates, 147 S.W.3d at 270-75. Under this rule,
"[a] permanent nuisance claim accrues when injury first occurs or is discovered," while "a temporary
nuisance claim accrues anew upon each injury." Id. at 270. The distinction has been said to turn on
"whether a nuisance is constant, regular, and likely to continue or whether it is sporadic, uncertain,
and likely to end," but courts had struggled with the application of these concepts. See id. at 272-75. 
The supreme court in Bates refocused the inquiry on the consequences that flowed from the
permanent-temporary distinction, particularly the types of damages recoverable for each type of
nuisance. See id. at 275-80. With temporary nuisances, it observed, the landowner may recover only
lost use and enjoyment (measured in terms of rental value) that has already accrued, while the
landowner could recover lost market value for permanent nuisances--"a figure that reflects all losses
from the injury, including lost rents expected in the future." Id. at 276. These considerations, the
court reasoned, provided a standard of reference for applying the concepts of "permanent" vs.
"temporary" or "constant" vs. "sporadic" nuisances: whether "injury occurs often enough before
trial that jurors can make a reasonable estimate of the long-term impact of the nuisance on the market
value of a property." Id. at 276-77. Thus, the supreme court explained,


Based on these considerations, we hold that the traditional Texas distinction between
temporary and permanent nuisances should be applied using the same standard of
reference that applies to the consequences flowing from it. Thus, if a nuisance occurs
several times in the years leading up to a trial and is likely to continue, jurors will
generally have enough evidence of frequency and duration to reasonably evaluate its
impact on neighboring property values. In such cases, the nuisance should be treated
as permanent, even if the exact dates, frequency, or extent of future damage remain
unknown. Conversely, a nuisance as to which any future impact remains speculative
at the time of trial must be deemed "temporary."


. . . 


[T]his standard should distinguish temporary and permanent nuisances in most cases. 
Generally, if a nuisance occurs at least a few times a year and appears likely to
continue, property values will begin to reflect that impact, and jurors should be able
to evaluate it with reasonable certainty. Even if a nuisance causes annoyance only
during certain weather conditions or certain months, annual experience should provide
a sufficient basis for evaluating the nuisance. Absent evidence that current
experiences are unrepresentative or about to change, such nuisances should be
considered "permanent" as a matter of law.



Id. at 280 (footnotes omitted). The supreme court added "that a nuisance should be deemed
temporary only if it is so irregular or intermittent over the period leading up to filing and trial
that future injury cannot be estimated with reasonable certainty," and permanent "if it is sufficiently
constant or regular (no matter how long between occurrences) that future impact can be reasonably
evaluated." Id. at 281. "Jurors should be asked to settle the question only to the extent there is a
dispute regarding what interference has occurred or whether it is likely to continue." Id.

 The supreme court in Bates also addressed whether the focus of the permanent-temporary inquiry is properly the source of the nuisance (the "sending end") or the resultant injury
(the "receiving end). See id. at 282. It concluded that generally a nuisance is permanent when either
the defendant's source or the plaintiff's injuries made it so, as "[i]n most nuisance cases, a permanent
source will result in permanent interference." Id. at 283. But this "presumption of a connection
between the two," the court added, "can be rebutted by evidence that a defendant's . . . operations
cause injury only under circumstances so rare that, even when they occur, it remains uncertain
whether or to what degree they may ever occur again." Id.

 Relying on Graham and Bates, Timmerman argued in his third summary-judgment
motion that the water diversion made the basis of the Mitchells' suit was "permanent" in nature. He
attached an affidavit previously filed by Tex Mitchell, as well as the depositions of both Tex and
Kim Mitchell. In his affidavit, Mr. Mitchell averred that "[e]ach time there is a heavy rain, water
is diverted from Defendant's property to the rear of my property. That water then flows across
my property where it has caused damage to the improvements located thereon, including a shed,
landscaping, flower beds, and the rear of the house." Similarly, in her deposition, Ms. Mitchell
testified that "if there's a small rain and not just a sprinkle . . . you can see the water coming
through" and "if it's a heavy rain, it's--it gushes out." She added that "I've seen it several times." 

 In their first issue on appeal, the Mitchells argue that the diversion here is
"temporary" in nature because "[u]ndisputed summary judgment evidence indicates that
Timmerman's drainage system did not cause injury to Mitchell's property until the summer of 2002"
and [n]o summary judgment establishes that the diversion caused injury to the Mitchell's property
from the time of its construction through the summer of 2002." Because of "[t]hese changes in the
injury caused by the diversion" beginning in the summer of 2002, the Mitchells reason, their injury
is "'so irregular and intermittent over the period leading up to filing and trial that future injury
cannot be estimated with reasonable certainty.'" (Quoting Bates, 147 S.W.3d at 281). The Mitchells
similarly suggest that these changes in the nature of the drainage constituted a "new and different
injury" for which their claims accrued during the summer of 2002. See id. at 279 (explaining that
"an old nuisance does not excuse a new and different one").

 We must reject the Mitchells' assertions that their claimed injury from the water
diversion is "temporary" in nature. The Mitchells admit that, at least since the summer of 2002, "the
drainage system has caused damage to [their] property every time there is a significant rainfall." As
the supreme court explained in Bates, "a nuisance should be deemed permanent if it is sufficiently
constant or regular (no matter how long between occurrences) that future impact can be reasonably
evaluated." Id. at 281. In particular, "if a nuisance occurs several times in the years leading up to
a trial and is likely to continue, jurors will generally have enough evidence of frequency and duration
to reasonably evaluate its impact on . . . property values . . . even if the exact dates, frequency, or
extent of future damage remain unknown." Id. at 280. Significantly, this is true of nuisances that
may vary with recurrent weather conditions, as "[e]ven if a nuisance causes annoyance only during
certain weather conditions or certain months, annual experience should provide a sufficient basis
for evaluating the nuisance" and its effect on property values. Id. at 280; see also id. at 283 ("a
recurrent nuisance is a permanent one, even if it is difficult to predict what the weather will be on
any particular day."). This standard compels us to conclude that the Mitchells' claimed injury is
"permanent" in nature. We overrule the Mitchells' first issue.

 Timmerman presented uncontroverted summary-judgment evidence establishing
that the Mitchells had consulted their counsel regarding "Water code violations" as early as
October 7, 2002. Consequently, the two-year limitations period would have begun to run no later
than this date and would have expired on October 7, 2004. It is also undisputed that the Mitchells
filed suit on March 30, 2004, and that Timmerman was not served until February 18, 2005, over
four months later. Consequently, the burden shifted to the Mitchells "to explain the delay." Proulx,
235 S.W.3d at 216 (quoting Murray, 800 S.W.2d at 830). The Mitchells did not controvert
Timmerman's summary-judgment proof that they did not request issuance of citation until
February 11, 2005. Instead, they rely solely on the explanation that Timmerman's counsel had
agreed to accept service and/or "abate" service while the parties attempted to resolve the matter.

 In Proulx, the supreme court indicated that unenforceable oral agreements regarding
service of process are a type of explanation that is "legally improper to raise the diligence issue." 
Id. (citing Brown v. Shores, 77 S.W.3d 884, 890 (Tex. App.--Houston [14th Dist.] 2002, no pet.)
(Brister, C.J., concurring), and Belleza-Gonzalez v. Villa, 57 S.W.3d 8, 11 (Tex. App.--Houston
[14th Dist.] 2001, no pet.)). This line of authorities cited with approval by the supreme court hold
that "when an agreement between attorneys or parties delays an appellant from obtaining service on
appellees, that agreement must meet the requirements of Rule 11." Villa, 57 S.W.3d at 12; see Allen
v. City of Midlothian, 927 S.W.2d 316, 320 (Tex. App.--Waco 1996, no writ); Yarrow v. Carmel
Cos., 2001 Tex. App. LEXIS 376 at *14 (Tex. App.--Austin Jan. 19, 2001, pet. denied) (not
designated for publication). Rule 11 of the Texas Rules of Civil Procedure provides that "no
agreement between attorneys or parties touching any suit pending will be enforced unless it be in
writing, signed, and filed with the papers as part of the record, or made in open court and entered of
record." Tex. R. Civ. P. 11. There is no evidence here of any agreement regarding service of
process that complied with rule 11. (9) Consequently, the alleged oral or informal "understanding" on
which the Mitchells rely cannot raise a fact issue regarding diligence. Proulx, 235 S.W.3d at 216. 
Although this may be a harsh result and one that potentially invites gamesmanship, see 
Belleza-Gonzalez, 57 S.W.3d at 13-14 (Wittig, J., dissenting), it is one that Proulx and rule 11
appear to require.

 The summary-judgment evidence thus establishes an unexplained delay of over
four months in obtaining service on Timmerman after limitations had expired. Such a delay
constitutes a lack of diligence as a matter of law. See, e.g., Boyattia v. Hinojosa, 18 S.W.3d 729,
733 (Tex. App.--Dallas 2000, pet. denied) (three-month delay after plaintiff had requested
citation and plaintiff failed to follow-up with clerk); Webster v. Thomas, 5 S.W.3d 287, 289
(Tex. App.--Houston [14th Dist.] 1999, pet. denied) (four-month and ten-day delay); Holt
v. D'Hanis State Bank, 993 S.W.2d 237, 241 (Tex. App.--San Antonio 1999, no pet.) (three-month
delay); Li v. University of Texas Health Sci. Ctr., 984 S.W.2d 647, 650 (Tex. App.--Houston
[14th Dist.] 1998, pet. denied) (four-month delay). Consequently, Timmerman was entitled to
summary judgment on this ground. We sustain Timmerman's cross-point.

 We affirm the district court's judgment.



 
 Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed on Motion for Rehearing

Filed: December 31, 2008

1. The Mitchells purchased the property in March 2003, but had lived there together since
the latter half of 2001. Kim Mitchell, furthermore, had lived in the house since 1998 or 1999. The
Mitchells pled that the previous owner, Ms. Mitchell's late grandmother, had assigned to them any
claims she owned against Timmerman arising from the alleged water diversion.
2. On the other hand, the summary-judgment record also included deposition testimony of
Tex Mitchell in which he recounted a conversation in which Timmerman, according to Mitchell,
informed him that "the drainage system that . . . was installed was intended to simulate the natural
run-off of water, but--but apparently was broken." See Graham v. Pirkey, 212 S.W.3d 507, 512
(Tex. App.--Austin 2006, no pet.). Mitchell did not elaborate on the timing of this particular
conversation or when the drainage system purportedly became "broken," but they had elsewhere
indicated that they had not identified Timmerman as the owner of the adjacent property until
March 2003.
3. In his first two motions, Timmerman also asserted no-evidence grounds challenging
various elements of the Mitchells' cause of action. These grounds are not at issue on appeal.
4. Timmerman did not attach or incorporate his earlier motions into his third motion.
5. Timmerman attached this invoice to his second summary-judgment motion. He attached
to his first motion, a demand letter from the Mitchells' prior counsel dated December 11, 2002.
6. Timmerman's counsel sent a December 6, 2004 fax stating, "You sent me a fax on March
22 enclosing a copy of an unsigned petition. I called you immediately and ask[ed] you to hold up
and give time . . . to work this out. On Friday you sent me another fax with a copy of a petition with
a file mark on it. This is the first time I knew that you had filed a suit."
7. Timmerman's current and prior counsel also submitted affidavits denying the existence of
any agreement of either to accept service on Timmerman's behalf.
8. The Honorable Suzanne Covington heard Timmerman's first motion, while the
Honorable Darlene Byrne heard the second and third motions. In their responses to Timmerman's
second and third motions, the Mitchells accused him of attempting to "forum shop" via the Travis
County central docket and sought sanctions, but the district court denied such relief.
9. We also observe that rule 119 of the rules of civil procedure requires a "written
memorandum" signed by a party, its duly authorized agent, or attorney "after suit is brought, sworn
to before a proper officer . . . and filed among the papers of the cause" to waive the issuance and
service of process on the party. See Tex. R. Civ. P. 119. None of the communications upon which
the Mitchells rely comply with rule 119.