# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-08-00320-CV

**Hugh T. Mitchell, III and Janice K. Mitchell, Appellants**

**v.**

**Terrell Timmerman, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126th JUDICIAL DISTRICT
## NO. D-1-GN-04-001038, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Our opinion and judgment dated November 7, 2008, are withdrawn and the following is substituted in its place. We overrule the Mitchells' motion for rehearing.

This is an appeal from a summary judgment that presents limitations issues. For the reasons explained below, we will affirm the judgment.

Spouses Hugh T. ("Tex") Mitchell, III and Janice K. ("Kim") Mitchell own residential property at 6206 Burns Street in Austin. Immediately behind the Mitchells' property is property owned by Terrell Timmerman at 6215 North Lamar. On Timmerman's property, near its boundary with the Mitchells' property, is a cinder-block wall. Some of the cinder blocks within the wall are placed sideways so as to create openings that enable rain or storm water to drain from Timmerman's property onto the Mitchells' property, which lies at a lower elevation. The Mitchells have alleged

that these and other components of a "drain system" installed on Timmerman's property have "diverted the natural flow of surface water" so as to damage their property.

The Mitchells sued Timmerman on March 30, 2004, seeking damages and injunctive relief under section 11.086 of the water code, which prohibits a person from "divert[ing] or impound[ing] the natural flow of surface waters in this state, or permit[ting] a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded." *See* Tex. Water Code Ann. § 11.086 (West 2008). It is undisputed that the Mitchells' suit is governed by a two-year statute of limitations. *See Graham v. Pirkey*, 212 S.W.3d 507, 512 (Tex. App.—Austin 2006, no pet.) (*citing Anders v. Mallard & Mallard, Inc.*, 817 S.W.2d 90, 95 (Tex. App.—Houston [14th Dist.] 1991, no writ)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2002 & Supp. 2008).[1]

Timmerman filed a succession of three traditional motions for summary judgment asserting, among other grounds, that the Mitchells had failed to file suit within the two-year limitations period. Though each of his motions raised limitations as a ground, Timmerman's arguments and evidence in each motion were not entirely identical. In his third and final motion, Timmerman argued chiefly that under this Court's decision in *Graham v. Pirkey*, 212 S.W.3d at 512, and *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264 (Tex. 2004), any diversion of surface water by his drainage system was "permanent" in nature, such that the Mitchells' claims would have

---

[1] The Mitchells purchased the property in March 2003, but had lived there together since the latter half of 2001. Kim Mitchell, furthermore, had lived in the house since 1998 or 1999. The Mitchells pled that the previous owner, Ms. Mitchell's late grandmother, had assigned to them any claims she owned against Timmerman arising from the alleged water diversion.

accrued when the system first caused injury. *See Bates*, 147 S.W.3d at 270 ("A permanent nuisance claim accrues when injury *first* occurs or is discovered; a temporary nuisance claim accrues *anew* upon each injury.") (emphasis in original); *Graham*, 212 S.W.3d at 512 (applying *Bates*'s analysis of accrual of nuisance claims to claims under section 11.086 of the water code). Timmerman attached an affidavit wherein he testified that he had purchased his property in 1988 and that "I have not done anything to change the flow of the surface water on my property, or altered the flow of such water to the Mitchell's property, since I bought it," that "[t]he flow of the surface water has remained unchanged by me since I bought the property in 1988," and that "th[e] drainage system was installed in the 1940's, before any of the surrounding houses, including Plaintiff's, were built."[2] Consequently, Timmerman reasoned, any claims the Mitchells owned regarding the water diversion would have accrued years ago, and would be barred by limitations. Timmerman added that because the drainage structure and diversion were open and obvious, the discovery rule would not apply and that, in any event, the Mitchells had discovered damage they later attributed to water diversion as early as 2001.

In each of his summary-judgment motions, Timmerman also asserted the ground that the Mitchells had failed to serve him with process within the limitations period and to act with

---

[2] On the other hand, the summary-judgment record also included deposition testimony of Tex Mitchell in which he recounted a conversation in which Timmerman, according to Mitchell, informed him that "the drainage system that . . . was installed was intended to simulate the natural run-off of water, but—but apparently was broken." *See Graham v. Pirkey*, 212 S.W.3d 507, 512 (Tex. App.—Austin 2006, no pet.). Mitchell did not elaborate on the timing of this particular conversation or when the drainage system purportedly became "broken," but they had elsewhere indicated that they had not identified Timmerman as the owner of the adjacent property until March 2003.

diligence in obtaining service thereafter.[3]  However, Timmerman briefed and attached evidence in support of this ground only in his first two motions.[4]  Timmerman's summary-judgment evidence regarding service and diligence included:

- the Mitchells' original petition, which was file-stamped on March 30, 2004.

- an invoice from the Mitchells' trial-level counsel reflecting that the Mitchells had consulted with him regarding "Water code violations" as early as October 7, 2002.  Timmerman relied on this date as the latest on which the two-year limitations period possibly could have begun to run.[5]  Thus, he reasoned, the two-year limitations period would have expired on October 7, 2004, at the latest.

- the citation, which was issued on February 14, 2005, and a receipt from the Travis County District Clerk reflecting that the Mitchells' prior counsel paid the service fee on that date.

- the return, which reflected that Timmerman was served on February 18, 2005.

In response, the Mitchells presented evidence to the effect that their prior counsel had a belief or understanding that Timmerman's prior counsel had agreed to accept service on Timmerman's behalf or to delay service.  The record includes copies of correspondence between the parties' respective counsel and Timmerman's insurance carrier reflecting attempts to resolve the dispute.  These communications began with a December 2002 demand letter from the Mitchells and continued through early 2005.

---

[3]  In his first two motions, Timmerman also asserted no-evidence grounds challenging various elements of the Mitchells' cause of action.  These grounds are not at issue on appeal.

[4]  Timmerman did not attach or incorporate his earlier motions into his third motion.

[5]  Timmerman attached this invoice to his second summary-judgment motion.  He attached to his first motion, a demand letter from the Mitchells' prior counsel dated December 11, 2002.

A March 22, 2004 fax cover sheet from the Mitchells' prior counsel to Timmerman's counsel states that "[m]y client has authorized me to move forward and file suit," and indicates that a copy of the petition is attached. Counsel further inquired, "[w]ill you accept service for Mr. Timmerman?" Concerning this fax, the Mitchells' prior counsel testified by affidavit that "I sent a copy of the petition to [Timmerman's counsel], after which we had a number of conversations. As a result of those conversations, I understood that [counsel] would accept service on behalf of Mr. Timmerman, but that we should abate proceeding with the suit, until we could work out a resolution." Subsequently, in a December 2, 2004 fax to Timmerman's prior counsel, counsel stated that "[m]y file reflects that in March I sent a copy of the petition filed after you agreed to accept service on behalf of Timmerman" and that "[w]e also agreed that no answer needed to be filed as we were working toward an amicable resolution." Timmerman's counsel responded with communications denying prior awareness that suit had actually been filed[6] and the existence of any agreement or authority to accept service on Timmerman's behalf.[7] The Mitchells' counsel averred that he "was completely surprised and taken aback" by this "revocation of his agreement to accept service," and "immediately moved forward to issue service and have Mr. Timmerman served." Other than the parties' competing assertions in affidavits and correspondence, there is no evidence of any agreement whereby Timmerman's counsel would accept service on his behalf or delay service.

---

[6] Timmerman's counsel sent a December 6, 2004 fax stating, "You sent me a fax on March 22 enclosing a copy of an unsigned petition. I called you immediately and ask[ed] you to hold up and give time . . . to work this out. On Friday you sent me another fax with a copy of a petition with a file mark on it. This is the first time I knew that you had filed a suit."

[7] Timmerman's current and prior counsel also submitted affidavits denying the existence of any agreement of either to accept service on Timmerman's behalf.

The district court denied each of Timmerman's first two summary-judgment motions but granted the third,[8] stating in its order that it "finds that no genuine issues of material fact exist, and based in part on *Graham v. Pirkey*, 212 S.W.3d 507 (Tex. App.—Austin 2006), the Motion should be granted." The Mitchells bring three issues on appeal, asserting that the district court erred in granting summary judgment because: (1) their claimed injury from the alleged water diversion was "temporary" rather than "permanent" as a matter of law; (2) even if their injury was permanent, fact issues remained as to whether their injury first occurred before mid-2002; and (3) the discovery rule tolled limitations until the fall of 2002. Timmerman brings a cross-point in which he urges that summary judgment must be affirmed because the district court erred in denying his first and second motions on the ground that the Mitchells, as a matter of law, failed to exercise diligence in effecting service after the limitations period expired. Our disposition of the Mitchells' first issue and Timmerman's cross-point is decisive.

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d

---

[8] The Honorable Suzanne Covington heard Timmerman's first motion, while the Honorable Darlene Byrne heard the second and third motions. In their responses to Timmerman's second and third motions, the Mitchells accused him of attempting to "forum shop" via the Travis County central docket and sought sanctions, but the district court denied such relief.

at 215. Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

If the trial court does not specify the ground or grounds on which it relied in granting summary judgment, we must affirm if any of the grounds presented in the motion were meritorious. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). We also may affirm based on an alternative ground on which the district court denied summary judgment that is raised in the motion or motions below and argued on appeal. *See Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5 (Tex. 1999); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). Consequently, we must consider Timmerman's diligence-in-service ground as a basis for affirming the summary judgment.

A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). To obtain summary judgment on the affirmative defense of limitations, a movant must conclusively establish when a cause of action accrued and that the plaintiff did not file suit within the limitations period. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2008).

Even if suit is filed within the limitations period, it is barred by limitations if the defendant is not served within the limitations period and the plaintiff did not exercise diligence in obtaining service. *See Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007) (per curiam) (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex. 1990); *Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex. 1970)). Once a defendant has affirmatively pled the limitations defense

and shown that service was effected after limitations expired, the burden shifts to the plaintiff "to explain the delay." *Proulx*, 235 S.W.3d at 216 (quoting *Murray*, 800 S.W.2d at 830). When the burden has been shifted in this manner, "it is the plaintiff's burden to present evidence regarding the efforts that were made to serve the defendant, and to explain every lapse in effort or period of delay." *Id.* "Generally, the question of the plaintiff's diligence in effecting service is one of fact, and is determined by examining the time it took to secure citation, service, or both, and the type of effort or lack of effort the plaintiff expended in procuring service." *Id.* The "relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Id.* However, the plaintiff may fail to raise a fact issue if the evidence demonstrates a lack of diligence as a matter of law, "as when one or more lapses between service are unexplained or patently unreasonable." *Id.*; *see also Holt v. D'Hanis State Bank*, 993 S.W.2d 237, 241 (Tex. App.—San Antonio 1999, no pet.) (plaintiff's failure to file response to summary judgment constituted failure to explain delay, and "[a]n unexplained delay constitutes a lack of due diligence as a matter of law"). Also, the plaintiff's explanation may be "legally improper to raise the diligence issue." *Proulx*, 235 S.W.3d at 216 (citing cases involving oral agreements to delay service and plaintiff's desire to obtain remand from federal court). But if the plaintiff's explanation for the delay raises a material fact issue concerning the diligence of service efforts, the burden shifts back to the defendant to conclusively show why, as a matter of law, the explanation is insufficient. *Id.*

Timmerman met his summary-judgment burden to establish that he was not served until after limitations had expired. On appeal, the Mitchells acknowledge that the Texas Supreme

8

Court's analysis in *Bates*—its seminal case regarding accrual of common law nuisance claims—governs accrual of their claims under section 11.086. In *Bates*, the supreme court clarified the application of the longstanding distinction in Texas law between "permanent" and "temporary" nuisances for purposes of determining accrual. *See Bates*, 147 S.W.3d at 270-75. Under this rule, "[a] permanent nuisance claim accrues when injury *first* occurs or is discovered," while "a temporary nuisance claim accrues *anew* upon each injury." *Id*. at 270. The distinction has been said to turn on "whether a nuisance is constant, regular, and likely to continue or whether it is sporadic, uncertain, and likely to end," but courts had struggled with the application of these concepts. *See id.* at 272-75. The supreme court in *Bates* refocused the inquiry on the consequences that flowed from the permanent-temporary distinction, particularly the types of damages recoverable for each type of nuisance. *See id.* at 275-80. With temporary nuisances, it observed, the landowner may recover only lost use and enjoyment (measured in terms of rental value) that has already accrued, while the landowner could recover lost market value for permanent nuisances—"a figure that reflects all losses from the injury, including lost rents expected in the future." *Id.* at 276. These considerations, the court reasoned, provided a standard of reference for applying the concepts of "permanent" vs. "temporary" or "constant" vs. "sporadic" nuisances: whether "injury occurs often enough before trial that jurors can make a reasonable estimate of the long-term impact of the nuisance on the market value of a property." *Id.* at 276-77. Thus, the supreme court explained,

> Based on these considerations, we hold that the traditional Texas distinction between temporary and permanent nuisances should be applied using the same standard of reference that applies to the consequences flowing from it. Thus, if a nuisance occurs several times in the years leading up to a trial and is likely to continue, jurors will generally have enough evidence of frequency and duration to reasonably evaluate its

9

impact on neighboring property values. In such cases, the nuisance should be treated as permanent, even if the exact dates, frequency, or extent of future damage remain unknown. Conversely, a nuisance as to which any future impact remains speculative at the time of trial must be deemed "temporary."

. . .

[T]his standard should distinguish temporary and permanent nuisances in most cases. Generally, if a nuisance occurs at least a few times a year and appears likely to continue, property values will begin to reflect that impact, and jurors should be able to evaluate it with reasonable certainty. Even if a nuisance causes annoyance only during certain weather conditions or certain months, annual experience should provide a sufficient basis for evaluating the nuisance. Absent evidence that current experiences are unrepresentative or about to change, such nuisances should be considered "permanent" as a matter of law.

*Id.* at 280 (footnotes omitted). The supreme court added "that a nuisance should be deemed temporary only if it is so irregular or intermittent over the period leading up to filing and trial that future injury cannot be estimated with reasonable certainty," and permanent "if it is sufficiently constant or regular (no matter how long between occurrences) that future impact can be reasonably evaluated." *Id.* at 281. "Jurors should be asked to settle the question only to the extent there is a dispute regarding what interference has occurred or whether it is likely to continue." *Id.*

The supreme court in *Bates* also addressed whether the focus of the permanent-temporary inquiry is properly the source of the nuisance (the "sending end") or the resultant injury (the "receiving end). *See id.* at 282. It concluded that generally a nuisance is permanent when either the defendant's source or the plaintiff's injuries made it so, as "[i]n most nuisance cases, a permanent source will result in permanent interference." *Id.* at 283. But this "presumption of a connection between the two," the court added, "can be rebutted by evidence that a defendant's . . . operations

10

cause injury only under circumstances so rare that, even when they occur, it remains uncertain whether or to what degree they may ever occur again." *Id.*

Relying on *Graham* and *Bates*, Timmerman argued in his third summary-judgment motion that the water diversion made the basis of the Mitchells' suit was "permanent" in nature. He attached an affidavit previously filed by Tex Mitchell, as well as the depositions of both Tex and Kim Mitchell. In his affidavit, Mr. Mitchell averred that "[e]ach time there is a heavy rain, water is diverted from Defendant's property to the rear of my property. That water then flows across my property where it has caused damage to the improvements located thereon, including a shed, landscaping, flower beds, and the rear of the house." Similarly, in her deposition, Ms. Mitchell testified that "if there's a small rain and not just a sprinkle . . . you can see the water coming through" and "if it's a heavy rain, it's—it gushes out." She added that "I've seen it several times."

In their first issue on appeal, the Mitchells argue that the diversion here is "temporary" in nature because "[u]ndisputed summary judgment evidence indicates that Timmerman's drainage system did not cause injury to Mitchell's property until the summer of 2002" and [n]o summary judgment establishes that the diversion caused injury to the Mitchell's property from the time of its construction through the summer of 2002." Because of "[t]hese changes in the injury caused by the diversion" beginning in the summer of 2002, the Mitchells reason, their injury is "'so irregular and intermittent over the period leading up to filing and trial that future injury cannot be estimated with reasonable certainty.'" (Quoting *Bates*, 147 S.W.3d at 281). The Mitchells similarly suggest that these changes in the nature of the drainage constituted a "new and different

11

injury" for which their claims accrued during the summer of 2002. *See id.* at 279 (explaining that "an old nuisance does not excuse a new and different one").

We must reject the Mitchells' assertions that their claimed injury from the water diversion is "temporary" in nature. The Mitchells admit that, at least since the summer of 2002, "the drainage system has caused damage to [their] property every time there is a significant rainfall." As the supreme court explained in *Bates*, "a nuisance should be deemed permanent if it is sufficiently constant or regular (no matter how long between occurrences) that future impact can be reasonably evaluated." *Id.* at 281. In particular, "if a nuisance occurs several times in the years leading up to a trial and is likely to continue, jurors will generally have enough evidence of frequency and duration to reasonably evaluate its impact on . . . property values . . . even if the exact dates, frequency, or extent of future damage remain unknown." *Id.* at 280. Significantly, this is true of nuisances that may vary with recurrent weather conditions, as "[e]ven if a nuisance causes annoyance only during certain weather conditions or certain months, annual experience should provide a sufficient basis for evaluating the nuisance" and its effect on property values. *Id.* at 280; *see also id.* at 283 ("a recurrent nuisance is a permanent one, even if it is difficult to predict what the weather will be on any particular day."). This standard compels us to conclude that the Mitchells' claimed injury is "permanent" in nature. We overrule the Mitchells' first issue.

Timmerman presented uncontroverted summary-judgment evidence establishing that the Mitchells had consulted their counsel regarding "Water code violations" as early as October 7, 2002. Consequently, the two-year limitations period would have begun to run no later than this date and would have expired on October 7, 2004. It is also undisputed that the Mitchells

12

filed suit on March 30, 2004, and that Timmerman was not served until February 18, 2005, over four months later. Consequently, the burden shifted to the Mitchells "to explain the delay." *Proulx*, 235 S.W.3d at 216 (quoting *Murray*, 800 S.W.2d at 830). The Mitchells did not controvert Timmerman's summary-judgment proof that they did not request issuance of citation until February 11, 2005. Instead, they rely solely on the explanation that Timmerman's counsel had agreed to accept service and/or "abate" service while the parties attempted to resolve the matter.

In *Proulx*, the supreme court indicated that unenforceable oral agreements regarding service of process are a type of explanation that is "legally improper to raise the diligence issue." *Id.* (citing *Brown v. Shores*, 77 S.W.3d 884, 890 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (Brister, C.J., concurring), and *Belleza-Gonzalez v. Villa*, 57 S.W.3d 8, 11 (Tex. App.—Houston [14th Dist.] 2001, no pet.)). This line of authorities cited with approval by the supreme court hold that "when an agreement between attorneys or parties delays an appellant from obtaining service on appellees, that agreement must meet the requirements of Rule 11." *Villa*, 57 S.W.3d at 12; *see Allen v. City of Midlothian*, 927 S.W.2d 316, 320 (Tex. App.—Waco 1996, no writ); *Yarrow v. Carmel Cos.*, 2001 Tex. App. LEXIS 376 at *14 (Tex. App.—Austin Jan. 19, 2001, pet. denied) (not designated for publication). Rule 11 of the Texas Rules of Civil Procedure provides that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed, and filed with the papers as part of the record, or made in open court and entered of record." Tex. R. Civ. P. 11. There is no evidence here of any agreement regarding service of

process that complied with rule 11.[9] Consequently, the alleged oral or informal "understanding" on which the Mitchells rely cannot raise a fact issue regarding diligence. *Proulx*, 235 S.W.3d at 216. Although this may be a harsh result and one that potentially invites gamesmanship, *see Belleza-Gonzalez*, 57 S.W.3d at 13-14 (Wittig, J., dissenting), it is one that *Proulx* and rule 11 appear to require.

The summary-judgment evidence thus establishes an unexplained delay of over four months in obtaining service on Timmerman after limitations had expired. Such a delay constitutes a lack of diligence as a matter of law. *See, e.g.*, *Boyattia v. Hinojosa*, 18 S.W.3d 729, 733 (Tex. App.—Dallas 2000, pet. denied) (three-month delay after plaintiff had requested citation and plaintiff failed to follow-up with clerk); *Webster v. Thomas*, 5 S.W.3d 287, 289 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (four-month and ten-day delay); *Holt v. D'Hanis State Bank*, 993 S.W.2d 237, 241 (Tex. App.—San Antonio 1999, no pet.) (three-month delay); *Li v. University of Texas Health Sci. Ctr.*, 984 S.W.2d 647, 650 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (four-month delay). Consequently, Timmerman was entitled to summary judgment on this ground. We sustain Timmerman's cross-point.

We affirm the district court's judgment.

---

[9] We also observe that rule 119 of the rules of civil procedure requires a "written memorandum" signed by a party, its duly authorized agent, or attorney "after suit is brought, sworn to before a proper officer . . . and filed among the papers of the cause" to waive the issuance and service of process on the party. *See* Tex. R. Civ. P. 119. None of the communications upon which the Mitchells rely comply with rule 119.

_____

           _____Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed on Motion for Rehearing

Filed:   December 31, 2008